**No. 19-1311**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

---

**JOSE SANTOS SANCHEZ & SONIA GONZALEZ,**
**Plaintiffs-Appellees**,

v.

**KEVIN McALEENAN, ACTING SECRETARY,**[1]
**U.S. DEPARTMENT OF HOMELAND SECURITY;**

**KENNETH T. CUCCINELLI, ACTING DIRECTOR,**[2]
**U.S. CITIZENSHIP AND IMMIGRATION SERVICES;**

**KRIS KRANDALL, FIELD OFFICE DIRECTOR,**
**LINCOLN USCIS FIELD OFFICE; and**

**JOHN THOMPSON, DISTRICT DIRECTOR,**
**NEWARK USCIS FIELD OFFICE,**

**Defendants-Appellants**.

---

**ON APPEAL FROM A FINAL JUDGMENT OF THE**
**U.S. DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF NEW JERSEY**
No. 1:16-cv-00651 (Kugler, J.) (D.N.J. Dec. 7, 2018)

---

[1] On April 11, 2019, Kevin McAleenan was sworn in as Acting Secretary of the Department of Homeland Security, automatically substituting for former Secretary Kirstjen Nielsen as a party. Fed. R. Civ. P. 25(d).

[2] As of June 10, 2019, Kenneth Cuccinelli is serving as the Acting Director of U.S. Citizenship and Immigration Services, automatically substituting for former Director L. Francis Cissna as a party. Fed. R. Civ. P. 25(d).

**DEFENDANTS-APPELLANTS' OPENING BRIEF**

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section

JEFFREY S. ROBINS
Deputy Director
Office of Immigration Litigation
District Court Section

UBAID ul-HAQ
Trial Attorney
Office of Immigration Litigation,
District Court Section
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4112

*Counsel for Defendants-Appellants*

## Table of Contents


INTRODUCTION ........................................................................................1

STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION ....4

STATEMENT OF THE ISSUE........................................................................5

STATEMENT OF RELATED CASES AND PROCEEDINGS .............................5

STATEMENT OF THE CASE........................................................................5

A. Statutory Background........................................................................5

B. Factual Background and Procedural History.........................................9

STANDARD AND SCOPE OF REVIEW ..........................................................15

SUMMARY OF THE ARGUMENT ...................................................................15

ARGUMENT ..............................................................................................16

I. Plaintiffs Are Ineligible to Adjust Their Status Because They Entered Without Inspection and Admission and Failed to Continuously Maintain a Lawful Status Since Entry.........................16

A. Plaintiffs Are Ineligible for Adjustment of Status Because They Entered the United States Without Being "Inspected and Admitted," and Nothing in the TPS Statute Changes That. ..........17

B. Even if Plaintiff Sanchez Had Been "Inspected and Admitted," He Would Still Be Ineligible for Adjustment of Status Because He Failed to Continuously Maintain a Lawful Status Since He Entered the United States. ....................................................................33

II. If the Court Concludes that the Statute Is Ambiguous, It Should Defer to USCIS's Interpretation Because It is Longstanding and Reasonable.......................................................................36

CONCLUSION.............................................................................................38

CERTIFICATION OF BAR MEMBERSHIP......................................................40

CERTIFICATION OF BRIEF FORMAT AND VIRUS CHECK.........................41

CERTIFICATION OF FILING AND SERVICE.................................................42

## Federal Cases

*Abdelqadar v. Gonzales*, 413 F.3d 668 (7th Cir. 2005)........................................21
*Bonilla v. Johnson*, 149 F. Supp. 3d 1135 (D. Minn. 2016)............................32, 33
*Chavez v. Holder*, 587 F. App'x 43 (4th Cir. 2014)..............................................23
*Christensen v. Harris County*, 529 U.S. 576 (2000)..............................................38
*De Leon Ochoa v. Att'y Gen. of U.S.*, 622 F.3d 341 (3d Cir. 2010)...................8, 21
*Duron v. Stul*, 724 F. App'x 791 (11th Cir. 2018)..........................................31, 34
*Estrada-Hernandez v. Lynch*, 819 F.3d 324 (7th Cir. 2016)..................................21
*Flores v. USCIS*, 718 F.3d 548 (6th Cir. 2013).....................................7, 12, 27, 28
*Fraternal Order of Police, Lodge 1 v. City of Camden*,
842 F.3d 231 (3d Cir. 2016)........................................................................15
*Gomez v. Lynch*, 831 F.3d 652 (5th Cir. 2016)......................................................18
*Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287 (3d Cir. 2012)...............................36
*Hanif v. Att'y Gen. of U.S.*, 694 F.3d 479 (3d Cir. 2012).......................................18
*Hayes v. Harvey*, 903 F.3d 32 (3d Cir. 2018).........................................................38
*Marquez v. Att'y Gen. of U.S.*, 490 F. App'x 481 (3d Cir. 2012)...........................18
*Medina v. Beers*, 65 F. Supp. 3d 419 (E.D. Pa. 2014).................................... passim
*Negrete-Ramirez v. Holder*, 741 F.3d 1047 (9th Cir. 2014)...................................31
*Qi-Zhuo v. Meissner*, 70 F.3d 136 (D.C. Cir. 1995)...............................................34
*Ramirez v. Brown*, 852 F.3d 954 (9th Cir. 2017).......................................8, 31, 32
*Ramirez v. Holder*, 609 F.3d 331 (4th Cir. 2010)...................................................22
*Roberts v. Holder*, 745 F.3d 928 (8th Cir. 2014)....................................................29
*Serrano v. U.S. Att'y Gen.*, 655 F.3d 1260 (11th Cir. 2011).......................... passim
*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)..................................................36, 38
*Taveras v. U.S. Att'y Gen.*, 731 F.3d 281 (3d Cir. 2013)..........................................6
*United States v. Mead Corp.*, 533 U.S. 218 (2001)...............................................38

## Administrative Decisions

*Matter of Blancas*, 23 I. & N. Dec. 458 (BIA 2002)..............................................18
*Matter of Castillo-Angulo*, 27 I. & N. Dec. 194 (BIA 2018).................................19
*Matter of Espinosa-Guillot*, 25 I. & N. Dec. 653 (BIA 2011)................................21
*Matter of Sosa-Ventura*, 25 I. & N. Dec. 391 (BIA 2010)......................................22
*Matter of V-X-*, 26 I. & N. Dec. 147 (BIA 2013)...................................................19

## Statutes

8 U.S.C. § 1101(a)(13)(A) ....................18, 21, 27
8 U.S.C. § 1101(a)(13)(B) ....................35
8 U.S.C. § 1101(a)(13)(C) ....................6
8 U.S.C. § 1101(a)(15)(B) ....................29
8 U.S.C. § 1101(a)(15)(H)(i) ....................24
8 U.S.C. § 1101(a)(20)....................5
8 U.S.C. § 1101(a)(27)(J) ....................3, 22
8 U.S.C. § 1182(a)(6)(A)(i) ....................28
8 U.S.C. § 1182(d)(5)(A)....................10
8 U.S.C. § 1182(h) ....................18
8 U.S.C. § 1227(a)(1)(B) ....................19
8 U.S.C. § 1254a ....................2, 8, 17
8 U.S.C. § 1254a(a)(1) ....................8
8 U.S.C. § 1254a(a)(5) ....................24
8 U.S.C. § 1254a(b)(1)....................8
8 U.S.C. § 1254a(b)(1)(B) ....................9
8 U.S.C. § 1254a(c)(1)(A) ....................28
8 U.S.C. § 1254a(f) .................... passim
8 U.S.C. § 1254a(f)(4) .................... passim
8 U.S.C. § 1255....................2, 5, 10
8 U.S.C. § 1255(a) .................... passim
8 U.S.C. § 1255(a)(2)....................28
8 U.S.C. § 1255(c)(2).................... passim
8 U.S.C. § 1255(h) ....................2, 6, 22
8 U.S.C. § 1255(i) ....................3, 6, 22
8 U.S.C. § 1255(k)(1) .................... passim
8 U.S.C. § 1255(m)(1) ....................23
28 U.S.C. § 1291....................5
28 U.S.C. § 1331....................4

## Rules

Fed. R. App. P. 4(a)(1)(B) ....................5
Fed. R. Civ. P. 25(d) .................... i

## Regulations

8 C.F.R. § 245.1(b)(3) .......... 20
8 C.F.R. § 245.1(d)(3) .......... 35
8 C.F.R. § 274a.12(a)(1) .......... 6

## Other Authorities

66 Fed. Reg. 14214-16 (Mar. 1, 2001) .......... 9
81 Fed. Reg. 44645-51 (July 8, 2016) .......... 9
83 Fed. Reg. 7103-09 (Mar. 1, 2019) .......... 9
INS Genco Op. No. 91-27, 1991 WL 1185138 (INS Mar. 4, 1991) .......... 23, 37, 38

# INTRODUCTION

This case presents an important and recurring question of statutory interpretation that has divided the federal courts of appeals: may an alien adjust his immigration status to that of an alien lawfully admitted for permanent residence—a status that carries significant benefits and that requires the alien to have been "inspected and admitted or paroled" into the United States, 8 U.S.C. § 1255(a)—when the alien entered the United States *without* being inspected and admitted or paroled, but was *later* granted Temporary Protected Status (TPS), a status under which the alien is considered as being "in, and maintaining, lawful status as a nonimmigrant" "during the period in which [the] alien is granted [TPS]," *id.* § 1254a(f)(4)? The district court in this case held that the answer is yes: such an alien is still eligible for adjustment of status because—according to the district court—TPS provides the required "inspect[ion] and admi[ssion]." *Id.* § 1255(a). The court therefore remanded to USCIS for review of Plaintiffs' adjustment of status applications, which the agency had previously denied because Plaintiffs had entered without inspection and admission or parole.

This Court should reverse. The district court's holding rests on a misinterpretation of the relevant statutory provisions.

The district court's holding cannot be reconciled with the statutory text. Under 8 U.S.C. § 1255—the provision authorizing the Secretary of Homeland Security to adjust an alien's status—an alien is eligible for an adjustment of status "if" the alien was "inspected and admitted or paroled" into the United States. 8 U.S.C. § 1255(a). Under that plain text, an alien who enters without admission or parole is ineligible for adjustment of status. Nothing about a grant of TPS changes that. The TPS provision, 8 U.S.C. § 1254a, states: "During a period in which an alien is granted temporary protected status," "for purposes of adjustment of status under section 1255 ... , the alien shall be considered as being in, and maintaining, lawful status as a nonimmigrant." 8 U.S.C. § 1254a(f)(4). That text does not say that TPS provides an admission or parole. So TPS, by its terms, does not provide the admission or parole that is necessary to obtain an adjustment of status.

The statutory structure bolsters this conclusion. Congress provided express exceptions to the "inspected and admitted or paroled" requirement for adjustment of status. *See, e.g.*, 8 U.S.C. § 1255(h), (i). But TPS is not one of those exceptions. That is particularly telling because Congress was careful and targeted in laying out these exceptions. For example, Congress provided that special immigrant juveniles (a precisely delineated category of minors within a larger group of "special

immigrants," *see id.* § 1101(a)(27)(J)) "shall be deemed, for purposes of" 8 U.S.C. § 1255(a), "to have been paroled into the United States." *Id.* § 1255(h)(1). Congress also provided that, "[n]otwithstanding" § 1255(a), a discrete group of aliens "physically present in the United States"—certain aliens who had an immigrant visa petition or labor certification filed on their behalf—"may apply ... for the adjustment of his or her status to that of an alien lawfully admitted for permanent residence." *Id.* § 1255(i). Congress thus knew which aliens it wanted to be eligible for an adjustment of status *despite* their failure to be admitted or paroled when they entered the United States. TPS beneficiaries are not such aliens.

This reading—the one that hews to the textual requirement of admission or parole at entry—makes good sense. Section 1254a(f)(4) of the TPS statute aims to bridge the gap created when an alien, who was otherwise admitted at a port of entry as a nonimmigrant, later applies for and is granted TPS, but then would fall out of the status provided by the previous admission. On this reading, § 1254a(f) reasonably allows TPS beneficiaries who entered with inspection and admission to seek adjustment of status, but not TPS beneficiaries who entered without inspection and admission. That is reasonable and tracks the plain language of both §§ 1254a(f)(4) and 1255.

The district court's holding, by contrast, is irreconcilable with the statutory text, structure, and aims. The district court held that a grant of TPS means that an alien has been "inspected and admitted" for purposes of adjusting his status, even though nothing in § 1254a(f)(4) or § 1255 says that TPS is an "admission." *See* JA015. The district court also concluded that TPS waives periods of unlawful status before a grant of TPS, emphasizing that an alien must first have status in order to lose it, or fail to maintain it. *See* JA016. But § 1254a(f)(4) is effective only "[d]uring a period in which" TPS is granted. 8 U.S.C. § 1254a(f). So an alien who entered without inspection and admission never obtained any status until he was granted TPS, and so failed to maintain lawful status. The district court's ruling also cannot account for the exceptions that Congress provided to the adjustment of status requirements, and it further does not fairly distinguish between aliens who entered with an admission and those who entered unlawfully. The district court's judgment should be reversed.

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331. The district court entered final judgment on December 7, 2018. JA005. Defendants, all of whom are federal government officials, filed a timely notice of appeal on February

4, 2019. *See* Fed. R. App. P. 4(a)(1)(B). This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Under 8 U.S.C. § 1255(a), an alien is eligible for an adjustment of his immigration status if he was "inspected and admitted or paroled" into the United States. The issue in this case is whether an alien who entered the United States without being "inspected and admitted or paroled" may nevertheless be eligible for an adjustment of status because after entering the United States the alien received Temporary Protected Status—a status under which he is considered to be "in, and maintaining, lawful status as a nonimmigrant." 8 U.S.C. § 1254a(f)(4).

## STATEMENT OF RELATED CASES AND PROCEEDINGS

There are no related cases or proceedings on this issue before this Court.

## STATEMENT OF THE CASE

### A. Statutory Background

Under 8 U.S.C. § 1255, an alien present in the United States may apply to adjust his immigration status—that is, he may become a lawful permanent resident without being required to leave the United States. An alien granted lawful-permanent-resident status enjoys significant benefits. He is "lawfully accorded the privilege of residing permanently in the United States as an immigrant," 8 U.S.C.

§ 1101(a)(20), he is authorized to seek employment in the United States, *see* 8 C.F.R. § 274a.12(a)(1), and he is, in many circumstances, authorized to travel to and from the United States without being required to apply for admission upon return, *see* 8 U.S.C. § 1101(a)(13)(C).

An alien is eligible for adjustment of status only if he entered the United States after having been "inspected and admitted or paroled." 8 U.S.C. § 1255(a). The statute contains exceptions to the "inspected and admitted or paroled" requirement, but Plaintiffs here did not demonstrate eligibility for any of those exceptions. *See, e.g.*, *id.* § 1255(a) (self-petitioning aliens under the Violence Against Women Act); *id.* § 1255(h) (certain special immigrant juveniles); *id.* § 1255(i) (aliens who, *inter alia*, filed a visa petition before April 30, 2001). "Admission" is thus central to eligibility for adjustment of status. Under the Immigration and Nationality Act (INA) "[t]he terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A); *see Taveras v. U.S. Att'y Gen.*, 731 F.3d 281, 290 (3d Cir. 2013) (explaining that the definition of "admission" under § 1101(a)(13)(A) pertains to "physical entrance into the country").

On top of the "inspected and admitted or paroled" requirement, § 1255 imposes several bars to adjustment of status. Under 8 U.S.C. § 1255(c)(2), for example, an applicant (with exceptions not relevant here) is barred from becoming a lawful permanent resident under § 1255(a) if he "has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States." 8 U.S.C. § 1255(c)(2). This bar does not apply, however, to certain adjustment-of-status applicants—such as those who seek to adjust status based on employment, *see id.* § 1255(k)—if the applicant is "present in the United States pursuant to a lawful admission" and has not failed to "maintain, continuously, a lawful status ... subsequent to such lawful admission." *Id.* § 1255(k)(1), (k)(2)(A).

A recurring legal question is how the adjustment-of-status statute applies to an alien who entered the United States without being "inspected and admitted or paroled" but later receives TPS—in particular, whether an alien who receives TPS is deemed "inspected and admitted." *Compare, e.g.*, *Serrano v. U.S. Att'y Gen.*, 655 F.3d 1260, 1265 (11th Cir. 2011) (holding that an alien who receives TPS is not deemed "inspected and admitted"), *with Flores v. USCIS*, 718 F.3d 548, 552-53 (6th

Cir. 2013) (holding that an alien who receives TPS is deemed "inspected and admitted"), *and Ramirez v. Brown*, 852 F.3d 954, 959 (9th Cir. 2017) (same).

Under 8 U.S.C. § 1254a, the Secretary of Homeland Security may designate certain nationals of a foreign state as eligible for TPS in cases of ongoing armed conflict, environmental disaster, or other extraordinary and temporary conditions in their country of origin that prevent safe return. 8 U.S.C. § 1254a(b)(1). TPS "was designed to shield aliens already in the country from removal when a natural disaster or similar occurrence has rendered removal unsafe." *De Leon Ochoa v. Att'y Gen. of U.S.*, 622 F.3d 341, 353 (3d Cir. 2010). A TPS beneficiary is not subject to removal "from the United States during the period in which such status is in effect" and is authorized to be employed in the United States. 8 U.S.C. § 1254a(a)(1).

But TPS benefits are limited. TPS allows eligible aliens only "to temporarily remain in and work in the United States while the" alien's home country "is designated by the TPS program." *De Leon Ochoa*, 622 F.3d at 344. While an alien possesses TPS, he "shall not be considered to be permanently residing in the United States under color of law," he "may be deemed ineligible for public assistance by a State," and—although he "may travel abroad"—he must have the "prior consent" of the Secretary of Homeland Security. 8 U.S.C. § 1254a(f)(1)-(3). The "status" that

a TPS beneficiary enjoys is also limited. "During a period in which an alien is granted [TPS] under [§ 1254a]: ... for purposes of adjustment of status under section 1255 ... , the alien shall be considered as being in, and maintaining, lawful status as a nonimmigrant." *Id.* § 1254a(f)(4).

### B. Factual Background and Procedural History

Plaintiffs Jose Santos Sanchez and Sonia Gonzalez are natives and citizens of El Salvador who entered the United States without inspection and admission (or parole) in 1997 and 1998, respectively. JA278 ¶ 3. On March 9, 2001, the Attorney General designated El Salvador under the TPS program after the country experienced three earthquakes. *See* 8 U.S.C. § 1254a(b)(1)(B); "Designation of El Salvador Under the Temporary Protected Status Program," 66 Fed. Reg. 14214-16 (Mar. 1, 2001). In 2001, Plaintiffs were granted TPS and have held that status since that time. JA278 ¶ 4; 167 ¶ 18. Since its initial designation, the government has periodically extended TPS eligibility for Salvadoran nationals. *See, e.g.*, 81 Fed. Reg. 44645-51 (July 8, 2016) (extending TPS designation to March 9, 2018); 83 Fed. Reg. 7103-09 (Mar. 1, 2019) (delaying the effective date of El Salvador's TPS termination until at least January 2, 2020, in accordance with a court order preliminarily enjoining the Secretary's termination of TPS for Salvadoran nationals).

In 2014, Plaintiffs applied for adjustment of status under 8 U.S.C. § 1255. JA278 ¶ 5. In 2015, Sanchez traveled outside the United States and upon return was paroled—a discretionary mechanism by which an alien is permitted to enter the United States for a prescribed purpose, such as humanitarian reasons—into the United States under his TPS. JA074; *see* 8 U.S.C. §§ 1182(d)(5)(A) (authorizing parole); 1254a(f)(3) (authorizing travel for aliens with TPS). Gonzalez had previously been paroled into the United States in 2011. JA144. Neither Plaintiff was granted parole at any other time.

In 2017, USCIS denied Plaintiffs' applications for adjustment of status because they had entered the United States without having been "inspected and admitted or paroled," so the agency concluded they were statutorily ineligible for an adjustment of status under § 1255(a). JA033. USCIS also decided that, even if Sanchez had been "inspected and ... paroled" in 2015 within the meaning of § 1255(a), his pre-TPS period of unlawful status from 1997 to 2001 made him ineligible for adjustment under § 1255(c)(2), which, as noted, bars an applicant from becoming a lawful permanent resident under § 1255(a) if he "has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States." JA033. Sanchez had applied for a

waiver of that bar under § 1255(k), but USCIS concluded that he was ineligible for that waiver because the waiver is available only for an alien who is "present in the United States pursuant to a lawful admission," 8 U.S.C. § 1255(k)(1), and Sanchez was in the United States under TPS and parole—not under a lawful admission. JA033.

Plaintiffs filed this suit, claiming that the denials violated the Administrative Procedure Act (APA) because an alien with TPS is "considered as being in, and maintaining, lawful status as a nonimmigrant" for purposes of adjustment of status. JA170-72. This, they contended, provided the requisite admission under § 1255(a). JA172. For the same reason, they asserted that TPS is also an "admission" within the meaning of § 1255(k), allowing Sanchez to be exempt from his pre-TPS period of unlawful status as an employment-based adjustment applicant. JA170-71 ¶ 28. Plaintiffs also sought mandamus on the same issues, and asserted due-process violations, arguing that the government failed to give them a meaningful opportunity to challenge the denial of their adjustment of status. JA172. The parties filed cross-motions for summary judgment on the APA/TPS issue; the government also moved to dismiss the mandamus and due-process claims. JA283-318; 319-336.

On December 7, 2018, the district court granted summary judgment to Plaintiffs, holding "that a grant of Temporary Protected Status under [§ 1254a(f)(4)] is sufficient to meet the requirement of 'inspected and admitted' under § 1255(a)." JA018; *see* JA014-021. The court reasoned that § 1254a(f)(4) "applies to the entirety of § 1255"; that § 1254a(f)(4) states that, "for purposes of adjustment of status under section 1255" an alien with TPS "*shall be considered as being in, and maintaining, lawful status as a nonimmigrant*"; and that "[t]his lawful status is wholly consistent with being considered as though Plaintiffs had been 'inspected and admitted' under § 1255." JA015 (quoting 8 U.S.C. §§ 1254a(f)(4) and 1255(a)) (emphasis in original; some internal quotation marks omitted).

The court "note[d]" that "other courts support this conclusion, citing and quoting the similar conclusions reached in *Flores v. USCIS*, 718 F.3d 548, 533 (6th Cir. 2013), and *Medina v. Beers*, 65 F. Supp. 3d 419, 429 (E.D. Pa. 2014). JA015; *see also id.* (citing two more district-court decisions from other circuits). And the court declined (JA015-16) to follow *Serrano v. U.S. Attorney General*, 655 F.3d 1260 (11th Cir. 2011), where the Eleventh Circuit concluded "[t]hat an alien with Temporary Protected Status has 'lawful status as a nonimmigrant' for purposes of adjusting his status does not change § 1255(a)'s threshold requirement that he is

eligible for adjustment of status only if he was initially inspected and admitted or paroled." *Id.* at 1265. In the district court's view, "*Serrano* offers little reasoning to support its reading of" §§ 1254a(f)(4) and 1255(a). JA016.

The court also deemed "fundamentally flawed" the government's position that "Sanchez's lawful status was not 'maintained' under [§ 1254a] because of his unauthorized work prior to the grant of" TPS. JA016. According to the district court, the government's position "does not make sense" because the government improperly focused on the period before Sanchez's TPS as barring "his later ability to 'maintain' a lawful status." *Id.* The court emphasized that "a person must *first* have lawful status in order to 'maintain' that lawful status." *Id.* (emphasis in original). The court thus seemed to conclude that a grant of TPS excuses any prior period of unlawful status. *See id.*

The court then rejected the government's "additional arguments." JA017; *see* JA017-18. The court rejected the argument "that the references to 'admission' and 'lawful status' within sections [1254a] and 1255 refer to separate requirements under the law," "that the term[s] 'admission' and 'admitted' mean a *physical* entry into the United States," and "that obtaining 'lawful status as a nonimmigrant' under [§ 1254a] cannot mean physical admission under § 1255." JA017 (emphasis in

original). The court added: "[T]his Court is not fooled by the government's careful attempt to parse words in light of § 1255's clear language." JA017. The court also refused to give USCIS "blind deference." *Id.*

Finally, the court stated that it "agree[d] with Judge Buckwalter's analysis" in *Medina v. Beers* in its treatment of the government's "remaining arguments." *Id.* The court did not elaborate on Judge Buckwalter's analysis, but stated that in *Medina* she addressed (at 65 F. Supp. 3d at 429-36) the following arguments: (1) that "Congress intended different meanings for the words 'lawful status as nonimmigrant' from 'inspected and admitted or paroled'"; (2) that, "if plaintiff's interpretation is correct, there would be no need for § 1255 to separately refer to the failure to maintain lawful status as a bar to eligibility in [§ 1255(c)]"; (3) that "the plain language of [§ 1254a(f)] addresses only the bar to adjustment of status in § 1255(c)(2)"; (4) that "plaintiff's interpretation of the statutory language conflicts with portions of § 1255"; (5) that "the Court should apply *Serrano*"; and (6) that "the government's interpretation is consistent with Congressional intent." JA017-18.

Based on this analysis, the court ruled the agency acted arbitrarily and capriciously in denying Plaintiffs' applications. JA018. The court therefore granted summary judgment to Plaintiffs and remanded to USCIS for further review of

Plaintiffs' adjustment-of-status applications. JA018, JA020-21. The court also dismissed the mandamus claim as moot, and rejected the due-process claim because Plaintiffs could not "show they are entitled to the adjustment of status." JA020; *see* JA018-20.

## STANDARD AND SCOPE OF REVIEW

This Court reviews a "grant[] of summary judgment de novo, applying the same standard as the district court." *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016).

## SUMMARY OF THE ARGUMENT

This Court should reverse the district court's judgment.

**I.** The statutory text and structure compel the conclusion that an alien is eligible for an adjustment of status only if he was "inspected and admitted or paroled." 8 U.S.C. § 1255(a). Nothing about a grant of TPS under § 1254a changes those requirements. And a grant of TPS does not supply an admission (or parole) to an alien who entered without inspection and admission (or parole). A grant of TPS means only that alien is "considered as being in, and maintaining, lawful status as a nonimmigrant." 8 U.S.C. § 1254a(f). Because Plaintiffs initially entered without inspection and admission (or parole), they are ineligible for adjustment of status. The district court erred in rejecting USCIS's denial of their adjustment of status

applications. Even if Sanchez could meet the "inspected ... paroled" requirement (based on a grant of parole in 2015), he would still be ineligible for adjustment of status because he "failed ... to maintain continuously a lawful status since entry into the United States." 8 U.S.C. § 1255(c)(2). The district court was wrong to hold otherwise.

**II.** If the Court believes that the statutes do not clearly compel the conclusions set forth above, the Court should defer to the agency's longstanding interpretation that itself embraces those conclusions.

## ARGUMENT

### I. Plaintiffs Are Ineligible to Adjust Their Status Because They Entered Without Inspection and Admission and Failed to Continuously Maintain a Lawful Status Since Entry.

This Court should reverse the district court's order granting summary judgment to Plaintiffs. The statutory text and structure compel the conclusion that an alien is eligible for an adjustment of status only if he was "inspected and admitted or paroled," 8 U.S.C. § 1255(a), that he must be "present in the United States pursuant to a lawful admission," *id.* § 1255(k)(1), and that he must also continuously maintain a lawful status since entry, *see id.* § 1255(c)(2). Nothing about a grant of TPS under § 1254a changes those requirements. USCIS correctly concluded that

Plaintiffs do not satisfy the statutory requirements and so are ineligible for an adjustment of status.

### A. Plaintiffs Are Ineligible for Adjustment of Status Because They Entered the United States Without Being "Inspected and Admitted," and Nothing in the TPS Statute Changes That.

The district court erred in holding that "being in, and maintaining, lawful status as a nonimmigrant" (as one is considered to be under § 1254a(f)(4) after receiving TPS) qualifies as having been "inspected and admitted" as required to be eligible for an adjustment of status under § 1255(a). JA015, 018.

Section 1255(a), by its plain terms, requires that an alien have been "inspected and admitted" to be eligible for adjustment of status. 8 U.S.C. § 1255(a). The TPS statute does not confer an admission on an alien—or deem an alien "admitted"—when an alien was never inspected and admitted when he entered. Rather, the TPS statute says that "for purposes of adjustment of status under section 1255," an alien with TPS "shall be considered as being in, and maintaining, lawful status as a nonimmigrant." *Id.* § 1254a(f)(4). That provision does not mention "admission," nor does it say that such an alien is deemed "admitted." In fact, the terms "admitted" or "admission" appear in 8 U.S.C. § 1254a only to advise that "[n]othing in [§ 1254a]

shall be construed as authorizing an alien to apply for admission to, or to be admitted to, the United States in order to apply for [TPS]." *Id.* § 1254a(c)(5).

These clear differences in wording between § 1255(a) and § 1254a are important, because "admission" and "lawful status" mean different things. *See Gomez v. Lynch*, 831 F.3d 652, 658 (5th Cir. 2016) (describing "admission" and "status" as "fundamentally distinct concepts"); *Marquez v. Att'y Gen. of U.S.*, 490 F. App'x 481, 483 (3d Cir. 2012) ("TPS is not an 'admission.'"). "Admission" is a defined term that means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). As noted, the term does not appear in § 1254a(f)(4). *Cf. Hanif v. Att'y Gen. of U.S.*, 694 F.3d 479, 486 (3d Cir. 2012) (recognizing that Congress omitted "admitted" from 8 U.S.C. § 1229b(a) but included it in § 1182(h), showing that it intended to "create[] a significant distinction between the two sections"). "Lawful status," though not defined in the INA, has been held to mean "the type of permission to be present in the United States that an individual has." *Gomez*, 831 F.3d at 658; *cf. Matter of Blancas*, 23 I. & N. Dec. 458, 460 (BIA 2002) (holding that the term "status" in § 1229b(a) "denotes someone who possess a certain legal standing, *e.g.*, classification as an immigrant or nonimmigrant"). The phrase "lawful status" in

§ 1254a(f)(4) "differs from the wording of § 1255(a), which requires only that an alien be 'inspected and admitted' and makes no mention of the alien's 'status' at admission." *Matter of Castillo-Angulo*, 27 I. & N. Dec. 194, 197 (BIA 2018).

There are considerable differences in meaning between the two terms. An alien can be admitted in a lawful status and later lose that lawful status due to some intervening event, but would still be considered to have been "admitted." *See, e.g.*, 8 U.S.C. § 1227(a)(1)(B) (rendering an alien deportable for being present in violation of law—for example, for remaining beyond an authorized period of stay). Or an alien can be admitted into the United States despite having no entitlement to be admitted in any lawful status. *See Matter of Castillo-Angulo*, 27 I. & N. Dec. at 201 (recognizing that aliens waved through a port of entry without valid U.S. immigration documents are "admitted," though in error). And an alien can be in a lawful status without having been admitted into the United States. *See, e.g.*, USCIS Policy Manual, Vol. 7, Part B, Ch. 2, § 3 (describing parole in place, which allows undocumented members of the U.S. Armed Forces to reside in the United States and qualify for certain benefits); *Matter of V-X-*, 26 I. & N. Dec. 147 (BIA 2013) (holding that a grant of asylum status in the United States is not an "admission"). TPS is an example of this last situation.

The critical textual point is this: The INA provides that someone is eligible for an adjustment of status only if he was "inspected and admitted or paroled." 8 U.S.C. § 1255(a). Someone who enters the United States without being "inspected and admitted or paroled" is thus ineligible for an adjustment of status. *See* 8 C.F.R. § 245.1(b)(3) (listing aliens that entered the United States without inspection and admission or parole as ineligible for adjustment of status).

Nothing about a grant of TPS changes that. Such a grant does not make it so the recipient was "inspected and admitted or paroled." The grant merely means that alien is "considered as being in, and maintaining, lawful status as a nonimmigrant." 8 U.S.C. § 1254a(f). It does not somehow change the critical fact that the alien was never "inspected and admitted or paroled." The Eleventh Circuit put the point well: Although "an alien with [TPS] has 'lawful status as a nonimmigrant' for purposes of adjusting his status," this "does not change § 1255(a)'s threshold requirement that he is eligible for adjustment of status only if he was initially inspected and admitted or paroled." *Serrano*, 655 F.3d at 1265. By reading "admission" into—or as equivalent to—"being in, and maintaining, lawful status as a nonimmigrant," the district court eviscerated Congress's requirement that applicants for adjustment of status of status under § 1255(a) must be "inspected and admitted or paroled."

The statutory structure and context bolster this conclusion. First, the statutory scheme explicitly defines "admission" as a lawful entry—which TPS is not. *See* 8 U.S.C. § 1101(a)(13)(A); *Abdelqadar v. Gonzales*, 413 F.3d 668, 673 (7th Cir. 2005) ("Section 1101(a)(13)(A) defines admission as a lawful entry, not as a particular legal status afterward."). Indeed, a grant of TPS assumes that an alien has *already* entered the United States because it requires an alien's physical presence in the United States at the time of a TPS designation before the alien may even apply for protection. *See* 8 U.S.C. § 1254a(c)(1)(A)(i), (c)(5). And an alien with TPS who is authorized to apply for adjustment of status must demonstrate that, "on the date of filing an application for adjustment of status," he "is *present in the United States pursuant to a lawful admission*." *Id.* § 1255(k)(1) (emphasis added). Consistent with that presence requirement, this Court has recognized that TPS "unambiguous[ly]" is not "a program of entry for an alien." *De Leon Ochoa*, 622 F.3d at 354.[3]

---

[3] Adjustment of status is ordinarily treated as an admission. *See Matter of Espinosa-Guillot*, 25 I. & N. Dec. 653, 654 (BIA 2011) ("An adjustment of status generally constitutes an admission."). One of the reasons for this is to avoid the absurdity that would result in the case of an alien who entered the United States unlawfully, and, after adjusting status, is convicted of a crime that implicates a deportable offense. *See Estrada-Hernandez v. Lynch*, 819 F.3d 324, 328 (7th Cir. 2016) (holding that adjustment of status is an "admission" for purposes of 8 U.S.C.

Second, Congress provided express exceptions to the "inspection and admission or parole" requirement. *See, e.g.*, 8 U.S.C. § 1255(h), (i); *Ramirez v. Holder*, 609 F.3d 331, 335 (4th Cir. 2010) ("Section 1255(i) allows aliens who entered without inspection but who have access to a visa ... to legalize their status without leaving the country.") (internal quotation marks and citation omitted). TPS is not one of these exceptions. That is telling because Congress was careful and targeted in laying out these exceptions. For example, Congress provided that special immigrant juveniles (a precisely delineated category of minors within a larger group of "special immigrants," *see id.* § 1182(a)(27)(J)) "shall be deemed, for purposes of" § 1255(a), "to have been paroled into the United States." *Id.* § 1255(h)(1). Congress also provided that, "[n]otwithstanding" § 1255(a), a discrete group of aliens "physically present in the United States"—certain aliens who had an immigration visa petition or labor certification filed on their behalf—"may apply ... for the adjustment of his or her status to that of an alien lawfully admitted for permanent residence." *Id.* § 1255(i). Congress thus knew which aliens it wanted to be eligible

§ 1227(a)(2)(A)(iii); "[o]therwise, illegal entrants would be exempt from removal and would, paradoxically, enjoy greater rights than lawful immigrants"). TPS does not raise these same concerns. *See Matter of Sosa-Ventura*, 25 I. & N. Dec. 391, 392-93 (BIA 2010) (explaining that "an alien's presence without admission, or inadmissibility based on that illegal presence, will not preclude a grant of TPS under most circumstances").

for an adjustment of status *despite* their failure to be admitted or paroled when they entered the United States. TPS beneficiaries are not such aliens. And TPS is not itself a lawful nonimmigrant status. It is only "considered as" equivalent to the lawful status that nonimmigrant status provides, but explicitly without the requisite admission into the United States at a port of entry that often accompanies nonimmigrant status. *See, e.g.*, 8 U.S.C. § 1255(m)(1) (allowing for the adjustment of status of aliens admitted into the United States on U nonimmigrant visas irrespective of manner of entry). This is consistent with § 1254a(a)(5), which allows for an alien to be in valid nonimmigrant status and TPS concurrently. *See Chavez v. Holder*, 587 F. App'x 43, 45 (4th Cir. 2014) ("[A]liens can enter the United States with status, but later be granted TPS once they are in the United States.").

This reading of the statute makes sense. Section 1254a(f)(4) aims to bridge the gap created when an alien, who was admitted at a port of entry as a nonimmigrant, later applies for and accepts TPS, but then would fall out of the status provided by the previous nonimmigrant admission. *See* INS Genco Op. No. 91-27, 1991 WL 1185138 (INS Mar. 4, 1991) ("An alien who is in an unlawful status or who has failed to maintain continuously lawful status is ordinarily ineligible for adjustment of status. Because of [§ 1254a(f)(4)], however, [§ 1255(c)(2)] will not

apply to [an applicant] granted TPS, but only for the period during which the alien is in TPS."); *see also* 8 U.S.C. § 1254a(a)(5) (allowing aliens to accept TPS simultaneous to any nonimmigrant status previously held). Consider an alien admitted to the United States on a nonimmigrant visa to work in a specialty occupation. *See* 8 U.S.C. § 1101(a)(15)(H)(i)(B). Suppose that, during the period that the alien is in lawful status as a nonimmigrant H-1B visa holder, she obtains TPS. On the reading set forth above, if her H-1B visa lapses "[d]uring the period in which [TPS] is granted," *id.* § 1254a(f), she may still seek adjustment of status because § 1254a(f)(4) allows USCIS to "consider[]" her as "being in" a nonimmigrant-type status (but not any specific nonimmigrant classification) on the date that she applies for adjustment of status, despite the lapse of her H-1B status. *Id.* § 1254a(f)(4). So the government's reading of § 1254a(f) reasonably allows TPS beneficiaries who entered with inspection and admission to seek adjustment of status, but not those who entered without inspection and admission.[4]

[4] The enactment history of TPS supports this view. The language now codified at 8 U.S.C. § 1254a(f)(4) was introduced following the June 1989 Tiananmen Square massacre. There was concern in Congress that Chinese nationals in the United States—many of whom were lawfully admitted aliens on nonimmigrant student visas—needed extended protection from a lapse in their status owing to conditions in China preventing their return. *See* 135 Cong. Rec. 14126-28 (1989); *see also* H.R. Rep. No. 101-245, at 14 (1989) (accompanying H.R. 2929). This backdrop supports

The district court gave several reasons for concluding "that a grant of Temporary Protected Status under [§ 1254a(f)(4)] is sufficient to meet the requirement of 'inspected and admitted' under § 1255(a)." JA018; *see* JA015-18. None of those reasons has merit.

*First*, the district court believed that the "clear and unambiguous" statutory text supports its conclusion and—in the district court's view—required rejection of the government's text-based arguments. JA015; *see* JA016 (emphasizing "clear" language and "clear and unambiguous language"). But the district court provided no meaningful textual analysis and never explained how the "clear" language of the statutes led to its conclusion. The court simply asserted that § 1254a(f)(4) "applies to the entirety of § 1255"; that § 1254a(f)(4) states that, "for purposes of adjustment of status under section 1255" an alien with TPS "*shall be considered as being in, and maintaining, lawful status as a nonimmigrant*"; and that "[t]his lawful status is wholly consistent with being considered as though Plaintiffs had been 'inspected and admitted' under § 1255." JA015 (quoting 8 U.S.C. §§ 1254a(f)(4) and 1255(a); emphasis in original; some internal quotation marks omitted). The district court did

---

the view that § 1254a(f)(4) aims to aid those who are unable to return to their country after lawfully entering the United States—and it does not suggest that § 1254a(f)(4) was intended to "cure" an unlawful status resulting from an initial unlawful entry.

not explain how being "considered as being in, and maintaining, lawful status as a nonimmigrant" constitutes or is equivalent to being "inspected and admitted," as required for adjustment of status. For reasons already given, the two requirements are not the same and the district court was wrong to treat a grant of TPS as satisfying § 1255(a). *See supra* at 18-19.

The district court similarly rejected the argument "that the references to 'admission' and 'lawful status' within sections [1254a] and 1255 refer to separate requirements under the law," "that the term[s] 'admission' and 'admitted' mean a *physical* entry into the United States," and "that obtaining 'lawful status as a nonimmigrant' under [§ 1254a] cannot mean physical admission under § 1255." JA017. The district court did not explain why it rejected this text-based argument, other than to say: "this Court is not fooled by the government's careful attempt to parse words in light of § 1255's clear language." JA017. For reasons already explained, the district court's conclusory, unreasoned view is unsound. The district court's view does not account for the different words used in the same statute, the materially different meanings of those words, or the aims that Congress pursued when it used those different words. *See supra* at 18-19; 21-22.

*Second*, the district court drew "support" for its conclusion from the decisions of other courts, including the Sixth Circuit's decision in *Flores v. USCIS*, 718 F.3d 548 (6th Cir. 2013), and Judge Buckwalter's decision in *Medina v. Beers*, 65 F. Supp. 3d 419 (E.D. Pa. 2014), both of which held that a grant of TPS satisfies the requirements of § 1255. JA015; *see* JA017-18 (invoking *Medina*). The district court's reliance on these decisions was misplaced.

In *Flores*, the Sixth Circuit held that the TPS statute allowed the plaintiff "to be considered as being in lawful status as a nonimmigrant for purposes of adjustment of status under § 1255." *Flores*, 718 F.3d at 553. The Sixth Circuit's reasons for its conclusion are unsound. First, the court explained that § 1254a(f)(4) references "§ 1255[] as a whole[]," not only § 1255(c)(2), and rejected the Government's argument that § 1254a(f)(4) was only meant to bridge the gap for aliens that fall out of lawful status at the time they would apply for adjustment of status. *Flores*, 718 F.3d at 553. The Sixth Circuit never acknowledged the statutory definition of "admission" in 8 U.S.C. § 1101(a)(13)(A), so it never grappled with the textual analysis set out above. Second, the Sixth Circuit determined that "[§ 1182] also provides an extensive list of '[c]lasses of aliens ineligible for visas or *admission*. This list makes no mention of TPS beneficiaries being categorically barred from visa

or admission eligibility." *Flores*, 718 F.3d at 554 (emphasis added). But that reasoning is irrelevant because *admissibility* under § 1182(a)(6)(A)(i) does not preclude adjustment *eligibility*. *Compare* 8 U.S.C. §§ 1255(a)(2) *and* 1182(a)(6)(A)(i) *with* 8 U.S.C. § 1255(c)(2). Third, the court in *Flores* reasoned that the "the plain language" of the "statutory scheme show[s] ... Congress did not intend to strip the Attorney General of discretion to waive admissibility requirements for all TPS beneficiaries, especially those that are not specifically excluded in the statute." *Flores*, 718 F.3d at 553-54. But the statute is clear that this admissibility requirement can be waived *only* to allow an alien to be granted TPS—not to render such an alien eligible for adjustment of status. Section 1254a(c)(1)(A) states that "an alien ... meets the requirements of *this paragraph* only if— ... (iii) the alien is admissible as an immigrant, *except as otherwise provided under* [§ 1254a(c)(2)(A)]." 8 U.S.C. § 1254a(c)(1)(A) (emphases added). Section 1254a(c)(2)(A), in turn, defines admissibility only in terms of "the determination of an alien's admissibility *for purposes of* [§ 1254a(c)(1)(A)(iii)][]" and not for purposes of a later application for adjustment of status. *Id.* § 1254a(c)(1)(A) (emphasis added).

The district court also relied on *Medina v. Beers*, 65 F. Supp. 3d 419, 429 (E.D.

Pa. 2014). *See* JA017-18. Like *Flores*, *Medina* held that the "clear terms[] [of] § 1254a(f)(4) appl[y] to the entirety of § 1255 and thereby satisf[y] the 'inspected and admitted or paroled' prerequisite of § 1255(a)." 65 F. Supp. 3d at 429; *see id*. at 431. This holding suffers from the same interpretive flaws that *Flores* does. "Status" and "admission" must be different requirements, because an alien is required to demonstrate them separately in order to adjust status. For example, an alien that is lawfully admitted on a nonimmigrant tourist visa, 8 U.S.C. § 1101(a)(15)(B), is "inspected and admitted" within the meaning of § 1255(a). But if that same alien falls out of status and then pursues adjustment of status through a non-immediate relative (*e.g.,* a lawful permanent resident spouse), he would still run afoul of § 1255(c)(2)'s failure to maintain status bar.

*Medina* also reasoned that the "immigration statutes use the words 'admitted' and 'admission' inconsistently," such that post-entry mechanisms such as adjustment of status, like TPS, could provide an admission. 65 F. Supp. 3d at 429 (citing *Roberts v. Holder*, 745 F.3d 928, 932 (8th Cir. 2014)). But the pivotal point here is that the TPS statute simply does not provide a basis for concluding that being "considered as being in, and maintaining, lawful status as a nonimmigrant" constitutes an admission and cannot plausibly be read to overcome a previous unlawful entry. *See supra* note

3.

*Medina* also reasoned that since "the process [of] obtaining ... nonimmigrant status requires an admission of the alien," so too does TPS. 65 F. Supp. 3d at 430 (internal quotation marks omitted). But *Medina* ignored the distinction between having been admitted as a nonimmigrant and maintaining lawful nonimmigrant status. Section 1254a, by its terms and in accord with the statutory scheme, addresses only the latter, providing important protection for lawfully admitted TPS beneficiaries who otherwise would be subject to the maintenance of lawful nonimmigrant status requirements of § 1255(c) (adjustment of status) and § 1258(a) (change of status).

Finally, *Medina* held that the Government's "argument simply makes no sense given the entire statutory scheme[]" because it would not operate to "cure the remainder of the [§ 1255(c)(2)] bar," rendering § 1254a(f)(4) "a meaningless provision." 65 F. Supp. 3d at 432-33. Specifically, the court determined that "[b]y stating that a TPS beneficiary shall be deemed as 'being in and maintaining' lawful nonimmigrant status, Congress deems the *date of entry* to be the date of the grant of TPS[,]" allowing beneficiaries to "avoid[] the bar [for] those who failed to maintain continuous lawful status." *Id*. at 433 & n.8 (emphasis added). As explained, however, TPS cannot cure the "period of illegal residence in the United States [an alien has]

prior to applying for and being granted TPS," *id*., because TPS's "lawful status" benefit applies only "[d]uring a period in which an alien is granted" TPS. 8 U.S.C. § 1254a(f); *see Duron v. Stul*, 724 F. App'x 791, 795 (11th Cir. 2018).

The district court did not meaningfully rely on *Ramirez v. Brown*, 852 F.3d 954 (9th Cir. 2017), and that decision also would not support its conclusion. *Ramirez* held that "§ 1254a(f)(4) unambiguously treats aliens with TPS as being 'admitted' for purposes of adjusting status." *Id*. at 958. First, the court emphasized that the "statutory provisions refer to '[t]he *admission* to the United States of any alien as a *nonimmigrant*." *Id*. at 960 (citing various provisions in the INA governing nonimmigrant admissions) (emphasis in original). The court reasoned that "by the very nature of obtaining lawful nonimmigrant status, the alien goes through inspection and is deemed 'admitted. That is wrong for the same reasons that *Medina* was incorrect, as explained above. Second, the Ninth Circuit held that "the port-of-entry definition [of "admission" at § 1101(a)(13)(A)] yields" in the context of TPS, because there are circumstances where an alien can be "admitted" from within the United States. *Ramirez*, 852 F.3d at 961. That is mistaken. *Ramirez* relied on *Negrete-Ramirez v. Holder*, 741 F.3d 1047, 1052 (9th Cir. 2014), for the proposition that the Ninth Circuit had "embrace[d] an alternative construction of" admission.

852 F.3d at 961. But in the cases that *Negrete-Ramirez* cited for that proposition, the term "admission" was actually present in the statutes at issue. The same is not true of § 1254a(f). Finally, *Ramirez* concluded that the Government's interpretation "would rob the [TPS statute] of much force" because the only groups that "would benefit from § 1254a(f)(4)'s elimination of the (c)(2) bar are applicants seeking adjustment based on employment-based visas and applicants seeking adjustment based on relatives other than spouses, children, and parents." *Ramirez*, 852 F.3d at 962. In fact, § 1254a(f)(4) retains significance over the significant population of aliens seeking adjustment through non-immediate relatives and employers. In addition, the statutory text, structure, and legislative history of TPS demonstrate that § 1254a(f)(4) was meant to benefit only the limited class of aliens who faced falling out of status after a lawful admission owing to their inability to return to their home countries, and not a waiver of all immigration violations—such as entry without inspection and admission or parole, or failure to continuously maintain lawful status—that occurred prior to obtaining TPS.[5] Accordingly, the district court's reliance on these cases was incorrect, and its holding should be reversed.

---

[5] The district court also relied on *Bonilla v. Johnson*, 149 F. Supp. 3d 1135 (D. Minn. 2016), which reached the same conclusion as *Medina* and *Flores*. *See Bonilla*, 149

### B. Even if Plaintiff Sanchez Had Been "Inspected and Admitted," He Would Still Be Ineligible for Adjustment of Status Because He Failed to Continuously Maintain a Lawful Status Since He Entered the United States.

Even if Sanchez could meet the "inspected admitted or paroled" requirement, he would still be ineligible for adjustment of status because he "failed ... to maintain continuously a lawful status since entry into the United States."[6] 8 U.S.C. § 1255(c)(2). The district court rejected this conclusion, but it was wrong to do so. As USCIS determined, even if Sanchez had been "inspected and ... paroled" in 2015 within the meaning of § 1255(a), his pre-TPS period of unlawful status from 1997 to 2001 made him ineligible for adjustment under § 1255(c)(2), which bars an applicant from becoming a lawful permanent resident under § 1255(a) if he "has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States." JA032-33. Sanchez applied for a waiver of that bar under § 1255(k), but—as USCIS concluded—he was

F. Supp. 3d at 1138. The *Bonilla* court relied on the reasons that those courts did, *see id*. at 1138-39, 41, and its holding should be rejected for those same reasons.

[6] The same rationale applies to Gonzalez, who was also paroled into the United States on her last entry, and seeks to adjust through Sanchez's employer as a derivative. The district court did not separately address Gonzalez's parole, noting only that "USCIS denied Gonzalez's adjustment because it was dependent on Sanchez's approval." JA009.

ineligible for that waiver because the waiver is available only for an alien who is "present in the United States pursuant to a lawful admission," 8 U.S.C. § 1255(k)(1), and Sanchez was in the United States under TPS and, since 2015, parole—not under a lawful admission. JA032. "Subsection (c) of § [1255] excludes from eligibility those aliens who, even though originally admitted legally into the country, have let their legal status lapse while residing here." *Qi-Zhuo v. Meissner*, 70 F.3d 136, 138 (D.C. Cir. 1995). Section 1254a(f)(4) parallels the language in § 1255(c)(2), and it only prospectively addresses that bar to eligibility for those admitted or paroled applicants who would otherwise lose lawful status. It does not erase prior periods of unlawful status. *See* 8 U.S.C. § 1254a(f) (offering the "lawful status" benefit only "[d]uring a period in which an alien is granted" TPS); *Duron*, 724 F. App'x at 795 ("we conclude that that the lawful-status benefit applies only to the period of time in which the alien has TPS, not to any prior period of unlawful status").

The district court deemed "fundamentally flawed" the Government's position that "Sanchez's lawful status was not 'maintained' under [§ 1254a] because of his unauthorized work prior to the grant of" TPS. JA016. According to the district court, the Government's position "does not make sense" because the Government improperly focused on the period before Sanchez's TPS as barring "his later ability

to ‘maintain’ a lawful status.” *Id.* The district court emphasized that “a person must *first* have lawful status in order to ‘maintain’ that lawful status.” *Id.* (emphasis in original). It thus appeared to conclude that a grant TPS excuses any period of unlawful status prior to the receipt of TPS. *See id.*

This analysis is unsound. As an employment-based adjustment applicant, Sanchez is ineligible for adjustment of status because of his period of unlawful status prior to obtaining TPS. 8 U.S.C. § 1255(c)(2). Section 1255(k) is an exception to this bar, but only if Sanchez can prove that TPS is considered an admission, such that his periods of unlawful status would not be *subsequent to* the so-called “lawful admission” that he would have this Court accept that TPS is. *Id.* § 1255(k)(2). TPS is not an admission, nor is it the basis by which Sanchez is “present in the United States.” *Id.* § 1255(k)(1). He is ineligible for this exception to § 1255(c)(2).

The fact that Sanchez is now present in the United States following parole does not except him from the bar at § 1255(c)(2). Section 1255(k)(1)’s exemption requires that “the alien, on the date of filing an application for adjustment of status, is *present in the United States pursuant to a lawful admission*,” and Sanchez’s parole is not a lawful admission. *See* 8 U.S.C. § 1101(a)(13)(B) (“[A]n alien who is paroled under section [1182(d)(5)] ... shall not be considered to have been admitted.”); 8

C.F.R. § 245.1(d)(3) ("[T]he departure and subsequent reentry of an individual who has not maintained a lawful immigration status on any previous entry into the United States does not erase the bar to adjustment of status in section [1255(c)(2)] for any application filed on or after November 6, 1986."). This Court should reject the district court's misunderstanding of plain and separate statutory requirements for adjustment of status.

## II. If the Court Concludes that the Statute Is Ambiguous, It Should Defer to USCIS's Interpretation Because It is Longstanding and Reasonable.

If this Court concludes that the statutory language is not clear, it should defer to USCIS's longstanding and reasonable interpretation of that statute, and reverse the district court's judgment. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 304 (3d Cir. 2012) ("[T]he most important considerations are whether the agency's interpretation is consistent and contemporaneous with other pronouncements of the agency and whether it is reasonable given the language and purpose of the Act."). USCIS holds the longstanding view of its predecessor agency (the Immigration and Naturalization Service (INS)) that a grant of TPS does not supply the admission required to be eligible for adjustment of status. In a legal opinion addressing hypothetical facts similar to those in this case—and issued the year after Congress first passed TPS—

the INS General Counsel determined that "[o]ne of the fundamental requirement[s] for adjustment is that the alien must have been 'inspected and admitted or paroled into the United States.' Since an alien who entered without inspection, by definition, cannot satisfy this requirement, the alien is ineligible for adjustment." INS Genco Op. No. 91-27, 1991 WL 1185138 (INS Mar. 4, 1991). This opinion continues to represent USCIS's position that 8 U.S.C. § 1254a(f)(4) does not apply to TPS beneficiaries who were not inspected and admitted or paroled or who failed to maintain lawful status. It further explains why non-immediate relative aliens, such as Plaintiffs, who initially enter the United States without inspection and admission or parole, obtain TPS, and then travel and return to the United States via an advance parole, nevertheless remain ineligible for adjustment of status. *See* INS Genco Op. No. 91-27, 1991 WL 1185138, at *2 (Mar. 4, 1991) ("Under Section [1254a(f)(4)], an alien is to be considered as satisfying the requirement of Section [1255(c)(2)] only so long as the alien is in TPS. Section [1254a(f)(4)] does not make lawful the alien's unlawful presence in the United States prior to the granting of TPS. Thus the alien's return to the United States under advance parole would not ordinarily relieve the alien of ineligibility for adjustment that results from the alien's prior unlawful status.") (internal citations omitted).

This contemporaneous, consistent, and longstanding interpretation merits deference. *See Hayes v. Harvey*, 903 F.3d 32, 46 (3d Cir. 2018); *see also United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) (citing *Skidmore*, 323 U.S. at 139-140); *Christensen v. Harris County*, 529 U.S. 576 (2000) ("interpretations contained in formats such as opinion letters are 'entitled to respect' under our decision in *Skidmore*"). The Eleventh Circuit recognized as much when it concluded that "an alien who entered the United States without inspection is ineligible for adjustment of status under § 1255, even if granted [TPS] under § 1254a." *Serrano*, 655 F.3d at 1265-66 (citing INS Genco Op. No 91-27, 1991 WL 1185138 (Mar. 4, 1991)). If this Court reaches the matter, it should join that view.

## CONCLUSION

Plaintiffs were not "inspected and admitted" upon entry and do not qualify from any exception to or exemption from that requirement. They are accordingly ineligible for adjustments of status, and USCIS correctly denied their adjustment applications. The district court erred in ruling otherwise. This Court should reverse the district court's order and remand with directions to grant summary judgment to the government.

Respectfully submitted,

June 12, 2019

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation

JEFFREY S. ROBINS
Deputy Director
District Court Section
Office of Immigration Litigation

*/s/ Ubaid ul-Haq*
UBAID ul-HAQ
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4112
Fax: (202) 305-7000
ubaid.ul-haq@usdoj.gov

*Counsel for Defendants-Appellants*

## CERTIFICATION OF BAR MEMBERSHIP

Pursuant to Third Circuit Local Rule 28.3, I hereby certify that as counsel for the United States, my membership in the bar of the U.S. Court of Appeals for the Third Circuit is waived.

*/s/ Ubaid ul-Haq*
UBAID ul-HAQ
Trial Attorney

**CERTIFICATION OF BRIEF FORMAT AND VIRUS CHECK**

I certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i). As measured by the word processing system used to prepare this brief, it contains 8,567 words, including footnotes.

I certify that the PDF version of this document was scanned with Symantec Endpoint Protection and no virus was detected.

I certify that the PDF version of this document filed with the Clerk of the Court through the CM/ECF system is identical to the hard copies sent to the Court via certified mail.

*/s/ Ubaid ul-Haq*
UBAID ul-HAQ
Trial Attorney

## CERTIFICATION OF FILING AND SERVICE

I hereby certify that on June 12, 2019, I electronically filed this Opening Brief for the Defendants-Appellants with the Court Clerk using the ECF system which will send notification to Appellant.

*/s/ Ubaid ul-Haq*
UBAID ul-HAQ
Trial Attorney