**No. 19-1311**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

---

JOSE SANTOS SANCHEZ & SONIA GONZALEZ,
*Plaintiffs-Appellees,*

*v.*

KEVIN McALEENAN, ACTING SECRETARY,
U.S. DEPARTMENT OF HOMELAND SECURITY;

Et Al.,
*Defendants-Appellants.*

---

On Appeal from the United States District Court
For The District of New Jersey
Case No. 1:16-cv-00651
Honorable J. Kugler, District Judge

---

**PLAINTIFFS-APPELLEES' RESPONSIVE BRIEF**

---


MICHAEL J. DEBENEDICTIS
**DEBENEDICTIS &
DEBENEDICTIS, LLC**
20 BRACE ROAD, SUITE 350
CHERRY HILL, NJ 08034
TELEPHONE: (856) 795-2101
mjd@debenedictislaw.com

JAIME W. APARISI
YUSUF R. AHMAD
**JAIME APARISI & ASSOCIATES LLC**
8630 FENTON STREET, SUITE 925
SILVER SPRING, MD 20910
TELEPHONE: (301) 562-1416
jaime@aparisi.com
yusuf@aparisi.com

*Counsel for Jose S. Sanchez, et. al.
Plaintiffs-Appellees*

# TABLE OF CONTENTS

**TABLE OF CONTENTS** .......... i

**TABLE OF AUTHORITIES** .......... iii

**INTRODUCTION** .......... 1

**ARGUMENT** .......... 3

- **I. The District Court Correctly Held that the Plaintiffs are Eligible to Adjust Their Status as They Have Been "Inspected and Admitted" Through a Grant of TPS.** .......... 3
  - A. A Grant of TPS Constitutes "Inspection and Admission" for Purposes of Adjustment of Status .......... 5
  - B. If the Plaintiffs Have Been "Inspected and Admitted" They Would Be Eligible to Adjust Status Despite Their Prior Period of Unlawful Status. .......... 17
- **II. If the Court Finds the Statute to be Ambiguous the Agency's Interpretation is Not Owed Deference.** .......... 19

**CONCLUSION** .......... 20

**STATEMENT IN SUPPORT OF ORAL ARGUMENT** .......... 21

**CERTIFICATE OF SERVICE** .......... 22

**CERTIFICATION RE ATTORNEY ADMISSIONS** .......... 23

**CERTIFICATE OF COMPLIANCE** .......... 24

**Verification Electronic and Paper copies Are Identical ..................................... 25**

**Verification of Virus Scan ......................................................................................... 26**

**TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Adusumelli v. Steiner*,
740 F.Supp.2d 582, 591 (S.D.N.Y. 2010) ........................................... 7

*Almendarez-Torres v. United States*,
523 U.S. 224, 234 (1998) .................................................................... 15

*Flores v. USCIS*,
718 F.3d 548 (6th Cir., 2013) ...................................................... 5, 6, 7

*Hanif v. Atty. Gen'l.*,
694 F.3d 479 (3d Cir. 2012) ................................................ 10, 12, 13

*Matter of Alarcon*,
20 I & N Dec. 557 (BIA 1992) ......................................................... 11

*Matter of Alyazji*,
25 I. & N. Dec. 397, 399 (BIA 2011) ................................................. 10

*Matter of Koljenovic*,
25 I. & N. Dec. 219 (BIA 2010) ........................................................ 10

*Matter of Rosas-Ramirez*,
22 I & N Dec. 616 (BIA 1999) .......................................................... 12

*Medina v. Beers*,
65 F.Supp.3d 419 (E.D. Pa. 2014) ............................................. *passim*

*Najafi v. Civiletti*,
511 F.Supp. 236, 239 (W.D.Mo.1981) ................................................. 7

*Ramirez v. Brown*,
852 F.3d 954 (9th Cir. 2017) ...................................................... *passim*

*Serrano v. Atty. Gen'l*,
655 F.3d 1260 (11th Cir. 2011) ........................................................ 6, 9

*Taveras v. Atty. Gen'l*,
731 F.3d 381 (3d. Cir. 2013) ........ 10, 11, 14

**Statutes**

8 U.S.C. § 1101(a)(13) ........ 2, 11, 13, 15

8 U.S.C. § 1101(a)(20) ........ 13

8 U.S.C. § 1182(h) ........ 12

8 U.S.C. § 1184(a)(1) ........ 1, 7, 9

8 U.S.C. § 1184(b) ........ 8

8 U.S.C. § 1184(k)(3) ........ 8

8 U.S.C. §1254a(a) ........ 9

8 U.S.C. §1254a(c) ........ 9

8 U.S.C. § 1254a(f) ........ *passim*

8 U.S.C. § 1255 ........ *passim*

8 U.S.C. § 1255(a) ........ *passim*

8 U.S.C. § 1255(b) ........ 2, 10, 13

8 U.S.C. § 1255(c) ........ 4, 13, 18

8 U.S.C. § 1255(h)(1) ........ 17

8 U.S.C. §1255(k) ........ *passim*

8 U.S.C. §1258(a) ........ 16

**Rules and Regulations**

8 C.F.R. §212.1 .......... 9

8 C.F.R. §214.1(a)(3)(i) .......... 9

8 C.F.R. §214.11(d)(6) .......... 9

8 C.F.R. §235.1(f)(1) .......... 9

8 C.F.R. §244.2(d) .......... 9

8 C.F.R. §244.3 .......... 9

8 C.F.R. §244.8 .......... 9

8 C.F.R. §244.10(b) .......... 9

## INTRODUCTION

This case presents a question of statutory interpretation: whether an alien's grant of Temporary Protected Status (TPS) constitutes an "inspection and admission" for purposes of 8 U.S.C. § 1255(a) and 8 U.S.C. § 1255(k)? The district court in this matter held that that the answer is yes and that a grant of TPS satisfies the "inspection and admission" requirement for the purposes of 8 U.S.C. § 1255. The district court remanded the matter to USCIS for a decision on the plaintiffs' applications for adjustment of status consistent with the district court's holding.

The Government appealed the district court's decision to this Court. This Court should affirm the district's court decision as the district court's decision is the correct interpretation of the relevant statutory provisions.

The district court's decision comports with the plain meaning of the statute. For an alien with TPS, "during a period in which an alien is granted temporary protected status," "for purposes of adjustment of status under section 1255…, the alien shall be considered as being in, and maintaining, lawful status as a nonimmigrant." 8 U.S.C. § 1255a(f). This language is determinative. The process of obtaining nonimmigrant status requires an "admission" of the alien. *See* 8 U.S.C. § 1184(a)(1). The application and approval process for TPS is akin to the "admission" process for nonimmigrants. As TPS holders are considered to be

nonimmigrants for purposes of adjustment of status, a logical reading of that statute leads to the conclusion that an alien with TPS has been "inspected and admitted" for the purposes of adjustment of status.

An admission can occur in a manner other than a physical entry and inspection at a port-of-entry. The statute at section 1255(b) states that "upon approval of a an application for adjustment made under subsection (a), the Attorney General shall record the alien's *lawful admission* for permanent residence as of the date the order of the Attorney General approving the application for the adjustment of status is made." 8 U.S.C. 1255(b). Section 1101(a)(13)(A) defines "admission" and does not state that it must occur at any specific location, such as a port-of-entry. 8 U.S.C. § 1101(a)(13)(A). The TPS application, review and interview or approval process constitutes an "admission." Just like an alien who was not previously "inspected and admitted" but later adjusted status and was considered "admitted," an alien who previously entered without inspection should be considered "admitted" upon approval of a TPS application.

Section 1254a(f) applies to the entirety of section 1255 and a grant of TPS satisfies the admission requirement of section 1255(k). For an alien with TPS who is seeking to adjust status based on an employment-based visa petition, their maintenance of a continuous lawful status shall be considered from their date of "admission," which in this case would be the date TPS was granted. For an

employment-based applicant for adjustment of status, periods of unlawful status prior to their lawful admission shall not be considered for purposes of adjustment under section 1255.

## ARGUMENT

### I. The District Court Correctly Held that the Plaintiffs are Eligible to Adjust Their Status as They Have Been "Inspected and Admitted" Through a Grant of TPS.

This Court should affirm the district court's decision granting summary judgement to Plaintiffs.

The plaintiffs' applications for adjustment of status are governed by 8 U.S.C. §1255. Section 1255(a) states:

> The status of an alien *who was inspected and admitted* or paroled into the United States or the status of any other alien having an approved petition for classification as a VAWA self-petitioner may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. §1255(a) (emphasis added). Applicants are generally barred from adjustment of status under section 1255 if the alien "continues in or accepts unauthorized employment prior to filing an application for adjustment of status or who is in unlawful immigration status on the date of filing the application for

adjustment of status or who has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States." 8 U.S.C. §1255(c)(2).

8 U.S.C. §1255(k) provides an exemption from 8 U.S.C. §1255(c)(2) for certain employment-based immigrants. 8 U.S.C. §1255(k) states that for certain employment-based immigrants the failure to maintain, continuously, lawful status or any unauthorized employment is only considered subsequent from the alien's lawful admission. 8 U.S.C. 1255(k). For aliens meeting the requirements of section 1255(k), unlawful status or unauthorized employment prior to their lawful admission would not be counted against them for purposes of 8 U.S.C. 1255(c)(2).

In the instant matter, the agency decision dated February 8, 2017 states that the reason for denying Mr. Sanchez's application to adjust status is the agency's contention that he was not inspected and admitted to the United States and their contention that his unauthorized employment prior to the grant of TPS bars him from adjustment. JA030-34. The agency decision contends that a grant of TPS does not constitute an inspection and admission to the United States. JA033. The agency held that Mr. Sanchez did not meet the requirements of 8 U.S.C. §1255(a) or 8 U.S.C. §1255(k) based on their holding that his grant of TPS in 2001 does not constitute a lawful admission. JA033. As Mrs. Gonzalez was a derivative applicant as the spouse of Mr. Sanchez, her application was also denied by DHS. JA118-19.

The plaintiffs assert that as TPS grantees in lawful nonimmigrant status after filing an application and having an interview and/or review with an immigration officer, they have been "inspected and admitted" to the United States. This comports with the plain language of the statute and regulations. The plaintiffs have been both "inspected and admitted" and "paroled" for purposes of 8 U.S.C. §1255(a). JA089, 136. The grant of TPS also satisfies the requirement of "lawful admission" for purposes of 8 U.S.C. §1255(k). As no other eligibility grounds are in dispute, the plaintiffs are statutorily eligible for adjustment of status.

### A. A Grant of TPS Constitutes "Inspection and Admission" for Purposes of Adjustment of Status

The district court was correct in holding that "being in, and maintaining, lawful status as a nonimmigrant" qualifies as having been "inspected and admitted" for purposes of adjustment of status under § 1255(a). JA015, 018.

The plain language of the relevant statutory provisions provides that a grant of TPS constitutes an inspection and admission into the United States; therefore, they meet the statutory requirements of 8 U.S.C. §1255(a) and §1255(k). Both the Ninth Circuit and Sixth Circuit Court of appeals have held that the plain meaning of the statute establishes that a grant of TPS constitutes inspection and admission for the purposes of 8 U.S.C. §1255. *See Ramirez v. Brown*, 852 F.3d 954 (9th Cir. 2017); *Flores v. USCIS*, 718 F.3d 548 (6th Cir. 2013). The United States District Court for

the Eastern District of Pennsylvania also held that TPS constitutes admission and inspection for the purposes of adjustment of status. *Medina v.* Beers, 65 F.Supp.3d 419 (E.D. Pa. 2014). The Eleventh Circuit held the contrary, that the grant of TPS does not constitute an admission. *Serrano v. United States Attorney General*, 655 F.3d 1260 (11th Cir. 2011).

The aliens in the *Ramirez, Flores, Medina,* and *Serrano* cases all had initially entered the U.S. without admission or inspection, had been granted and maintained TPS, and were seeking adjustment of status based on an approved immigrant visa. *Ramirez v. Brown,* 852 F.3d at 957; *Flores v. USCIS*, 718 F.3d at 549-50; *Medina v. Beers*, 65 F.Supp.32 at 421; *Serrano v. United States*, 655 F.3d at 1263. The cases can be distinguished in that the aliens in the instant matter as well as the *Ramirez, Flores,* and *Medina* cases all asserted that their grant of TPS constituted an inspection and admission, while the alien in the *Serrano* matter asserted that a grant of TPS exempted him from the inspection and admission requirement of 8 U.S.C. 1255(a). *Id.* at 1265. This Court should adopt the reasoning of both the Ninth and Sixth Circuits and affirm the decision of the district court.

The plain language of the TPS statute itself leads to the conclusion that a grant of TPS satisfies the inspection and admission requirement for the purposes of adjustment of status. 8 U.S.C. § 1254a(f) clearly establishes that an alien granted TPS is considered to be in lawful nonimmigrant status for the purposes of

adjustment of status. “The language explicitly refers to the adjustment statute, §1255, and confers the status of lawful nonimmigrant on TPS recipients when looking at adjusting their status.” *Ramirez v. Brown*, 852 F.3d at 959; *see also Flores v. USCIS*, 718 at 551-53. Based on the clear language of the statute, Mr. Sanchez and Mrs. Gonzalez were both in lawful nonimmigrant status as TPS holders at the time they filed their applications for adjustment of status. 8 U.S.C. §1254a(f).

The plaintiffs’ application and grant of their nonimmigrant status as TPS holders required them being “admitted.” Under the immigration laws, the process of obtaining nonimmigrant status requires the “admission” of the alien. *Medina v. Beers*, 65 F.Supp.3d at 430 *citing* 8 U.S.C. § 1184(a)(1) ("The *admission* to the United States of any alien as a nonimmigrant ...") (emphasis added); *Adusumelli v. Steiner*, 740 F.Supp.2d 582, 591 (S.D.N.Y.2010) ("Nonimmigrant aliens are *admitted* to the United States only for the duration of their status") (quotations omitted) (emphasis added), aff'd 686 F.3d 66 (2d Cir.2012); *Najafi v. Civiletti*, 511 F.Supp. 236, 239 (W.D.Mo.1981) ("Nonimmigrant aliens ... are *admitted* into the United States for some specific purpose, e.g., work, school, tourism, etc., and only "for such time and under such conditions as the Attorney General may by regulations prescribe."") (emphasis added). Every alien “shall be presumed to be an immigrant until he establishes to the satisfaction of the consular officer, at the

time of application for a visa, and the immigration officers, at the time of application for admission, that he is entitled to a nonimmigrant status." 8 U.S.C. §1184(b). "By the very nature of obtaining lawful nonimmigrant status, the alien goes through inspection and is deemed 'admitted.'" *Ramirez v. Brown*, 852 F.3d at 960 *citing* 8.U.S.C. §1184(k)(3) ("the admission, and continued stay in lawful status, of such a nonimmigrant").

Plaintiffs do not dispute the Government's argument that there are clear differences between the terms, "admission" and "lawful status," and agree that they are distinct. The Government seems to contend that the plaintiffs are asserting that being in any lawful status is equivalent to an admission. This is not correct, what the plaintiffs assert is that the process of obtaining TPS constitutes an admission, akin to an alien who is considered admitted after an adjustment of status. *See Matter of Espinosa-Guillot*, 25 I&N Dec. 653, 654 (BIA 2011) ("An adjustment of status generally constitutes an admission.").

Both the statutes and regulations demonstrate that the application and approval process for TPS is very similar to the "admission" process for nonimmigrants, further demonstrating that a grant of TPS should be considered an admission for §1255. Both applicants for TPS and nonimmigrant status must demonstrate that they meet the identity and citizenship requirements by submitting the requisite supporting documentation. *Compare* §1184(k)(3), §1184(b); 8 C.F.R.

§§212.1, 235.1(f)(1), *with* 8 U.S.C. §1254a(a)(1), (c)(1)(A); 8 C.F.R. §244.9(a). Comparably, both applicants for TPS and nonimmigrant status must establish that they are admissible to the U.S. and do not trigger certain grounds of inadmissibility. *Compare* 8 U.S.C. §1182(a), (d)(11)-(12), (g)-(i); 8 C.F.R. §212.7, 214.1(a)(3)(i), *with* 8 U.S.C. §1254a(c)(1)(A)(iii), (c)(2)(A); 8 C.F.R. §§244.2(d), 244.3. After submission, both applications for nonimmigrant status and TPS are reviewed by USCIS, the applicant is possibly interviewed, and only then is the application approved or denied. *Compare* 8 U.S.C. §1184(a)(1), (b); 8 C.F.R. § 214.11(d)(6), *with* 8 U.S.C. §1254a(a)(3)(A); 8 C.F.R. §§244.8, 244.10(b). "That the TPS application is subject to a rigorous process comparable to any other admission process further confirms that an alien approved for TPS has been 'admitted.'" *Ramirez v. Brown*, 852 F.3d at 960.

The Eleventh Circuit's holding in *Serrano* can be distinguished from the holdings by the Ninth Circuit in *Ramirez* and the Sixth Circuit in *Flores*. The alien in *Serrano* did not argue that a grant of TPS satisfied the inspection and admission requirement of section 1255(a) but instead argued "that section 1254a(f)(4) alters the 'inspected and admitted or paroled' limitation on eligibility for adjustment of status under section 1255(a)." *Serrano v. United States Attorney General*, 655 F.3d at 1265. As the alien in *Serrano* did not assert that he was inspected and admitted, the Eleventh Circuit never analyzed or made a holding on that issue in their

decision; therefore the Eleventh Circuit's reasoning and holding in *Serrano* should not have any impact on the Court's holding in the instant matter. *Id.*

An alien does not need to make a physical entry into the United States at a port-of-entry in order to be deemed inspected and admitted. Section 1255(b) states that "upon the approval of an application for adjustment made under subsection (a), the Attorney General shall record the alien's *lawful admission* for permanent residence as of the date the order of the Attorney General approving the application for the adjustment of status is made." 8 U.S.C. 1255(b) (emphasis added). The Board of Immigration Appeals has also interpreted the statutes as treating adjustment of status as a substitute for port-of-entry inspection. *Medina v. Beers*, 65 F.Supp.3s at 429-430 *citing Matter of Koljenovic,* 25 I. & N. Dec. 219, 221 (BIA 2010) ("Adjustment of status is essentially a proxy for inspection and permission to enter at the border, which is given as a matter of administrative grace."); *Matter of Alyazji*, 25 I. & N. Dec. 397, 399 (BIA 2011) (treating adjustment of status as admission under immigration laws).

The Third Circuit decisions in *Hanif v. Atty. Gen'l*, 694 F.3d 479 (3d. Cir. 2012) and *Taveras v. Atty. Gen'l,* 731 F.3d 381 (3d. Cir. 2013), discuss what constitutes an admission for purposes of eligibility of a waiver from removal and do not discuss "admission" in the context of 8 U.S.C. 1255; therefore, they do not address the issue in this matter. "Neither dealt with the meaning of the term

"admitted" in the context of § 1255(a). As such, neither case is controlling on the issue presently before this Court." *Medina v. Beers*, 65 F.Supp.3d 419, 429 n.3 (E.D. Pa 2014).

In *Taveras*, the alien argued that for purposes of 8 U.S.C. § 1101(a)(13)(C)(v) that his application for adjustment of status in removal proceedings was equal to him "seeking an admission." *Taveras*, 731 F.3d at 289. The Third Circuit's analysis in *Taveras* focuses on whether an application for adjustment of status would be considered to be "seeking an admission" and did not focus on being admitted and inspected for purposes of 8 U.S.C. §1255(a). *See id.* The court in Taveras states "this is because the 'admission' to which § 101(a)(13)(C) refers is an entirely different and unrelated immigration procedure from adjustment of status." *Id.* at 289.

While the court in Taveras held that admission for purposes of INA § 101(a)(13)(C) applies only to a physical entry and not adjustment of status, the holding by the Third Circuit in Taveras does not establish that one cannot be considered to have been admitted without a physical entry at a port-of-entry. *See id*. The court in Taveras does not equate a physical admission at a port-of-entry with adjustment of status, but they do cite cases that establish that an alien who goes through the adjustment of status process will considered to have accomplished an admission to the United States. *Id*. citing *Matter of Alarcon*, 20 I

& N Dec. 557, 562 (BIA 1992) ("As he is seeking to adjust his status to that of lawful permanent resident, the respondent in this case is assimilated to the position of an applicant for entry into the United States." (emphasis added)); *Matter of Rosas-Ramirez*, 22 I & N Dec. 616, 619 (BIA 1999) ("Our determination that aliens 'lawfully admitted for permanent residence' through the adjustment process are considered to have accomplished an 'admission' to the United States is supported by the language of the adjustment provisions themselves." (emphasis added)).

In *Hanif*, the Third Circuit analyzed limitations to a waiver under 8 U.S.C. § 1182(h) and what constituted "previously admitted as an alien lawfully admitted for permanent residence." *See Hanif v. Taveras*, 694 F.3d 479 (3d. Cir. 2012). The Third Circuit held that "this phrase requires not only a prior admission to the United States, but also that the prior admission has been made while the alien was in the status of a lawful permanent resident." *Hanif*, 694 F.3d at 484 . The court in *Hanif* held that an adjustment of status in the United States did not constitute a prior admission while in permanent resident status. *Id.* The Third Circuit in *Hanif* did not discuss if only a physical entry into the United States would suffice as an admission for purposes of 8 U.S.C. § 1255. *See id.*

The Third Circuit in *Hanif* was interpreting a specific phrase within a subsection of the statute that is distinct from the "inspected and admitted or

paroled" requirement in §1255(a).

> Congress treated 'admission' as an event or action, while in *8 U.S.C. § 1101(a)(20)* Congress regarded 'lawfully admitted for permanent residence' as an immigration status. The date of gaining a new status is not the same as the date of the physical event of entering the country. We perceive the recording requirement of *§ 1255(b)* to be a ministerial provision relating to the monitoring and control of the number of visas available in any given year, rather than an effort by Congress to amend the definitions of 'admitted' and 'lawfully admitted for permanent residence' set forth in *§ 1101(a)*. *Hanif* at 485.

Unlike §1255(b), neither §1255(a) nor even §1255(c) are 'ministerial' in nature. The application of each requires a separate an independent adjudication and determination of the legal and factual background sufficient to make a finding as to whether an individual has been "inspected and admitted or paroled" or even whether the individual can be considered to "maintain continuously a lawful status since entry into the United States." The Defendants are incorrect in asserting that the Court held, or even supported an interpretation, that an admission required "a physical entry after inspection by an immigration officer." The Court in *Hanif* only cited to the language from §1101(a)(13)(A) and did not ever hold or imply that an admission had to occur at the border or a port of entry or even that it had to occur with a particular kind of immigration officer.

The plaintiffs in this matter are not arguing that their grant of TPS constitutes a physical entry but instead contend that by being granted TPS they are considered to have accomplished an admission to the United States. While the

Defendants contend that "admission" only occurs at a port-of-entry, they themselves state in their memorandum that aliens lawfully admitted for permanent residence through the adjustment process are considered to have accomplished an admission an admission to the United States. Defendants' Memorandum at 18. If an alien who adjusts status to a permanent resident is considered to have accomplished an admission, then those granted TPS should be considered to have satisfied such as well.

Whether an alien has been "admitted" by making a physical entry into the United States at a port-of-entry versus an alien being "considered" to have made an "admission" should not impact whether the alien satisfies the "admitted" requirement of 8 U.S.C. § 1255. The Defendants place a great deal of emphasis on the phrase "considered," but whether an individual is something or is "considered" to be something should not have a material difference on statutory eligibility. This is akin to a minor being charged as an adult in criminal court; while the minor is not an adult he is "considered" to be for the legal purposes. *Medina* correctly distinguished the Third Circuit's holdings in *Taveras* and *Hanif* when holding that an admission did not have to occur at a port-of-entry. *Medina*, 65 F.Supp.3d at 429-30.

As TPS grantees in lawful nonimmigrant status after filing a lawful application and having an interview and/or review with an immigration officer, the

plaintiffs should be considered to be "admitted." 8 U.S.C. §1101(a)(13) defines "admission" and does not require it to occur in any specific location – such as a Port of Entry. The interpretation apparently espoused by the Agency - which does not directly analyze the plain language of any part of the INA relating to TPS or the definition of "admission" - is that the TPS application, review and interview process cannot constitute an "admission." However, the definition of "admission" does not require the inspection and authorization to be made at a particular point - such as a port of entry. It does not limit the type of immigration officers empowered to provide the inspection and authorization that constitute a lawful admission. Further, by referencing back to §1254a(f)(4), the plain language of the INA provides that the final result of a TPS grant is an "authorization" to be in lawful status, as that word is used in §1101(a)(13). In other words, even an individual whose original entry was unlawful is accorded the lawful status of TPS and - for the specific purpose of adjustment under §1255 - is considered to be lawfully in the United States. An individual's original entry is irrelevant because the subsequent grant of TPS status provides the "lawful entry" referred to in §1101(a)(13).

The language and structure of 8 U.S.C. §1254a(f) and 8 U.S.C. §1255 demonstrate that Congress anticipated that aliens granted TPS would be able to qualify for adjustment under §1255 based on them being considered lawful nonimmigrants. *See Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998)

(explaining that "the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute"). Section 1255 being titled "Adjustment of status of nonimmigrant to that of a person admitted for permanent residence" is not without significance. "It uses language that directly links the adjustment statute to the TPS statute and §1254a(f)(4)'s phrasing of 'lawful status as a nonimmigrant.'" *v. Brown*, 852 F.3d at 961.

In addition, it is important to look at the other statute that is referenced in §1254a(f). That statute is section 1258(a) which states the following:

> The Secretary of Homeland Security may, under such conditions as he may prescribe, authorize a change from any nonimmigrant classification to any other nonimmigrant classification in the case of any alien lawfully *admitted* to the United States as a nonimmigrant who is continuing to maintain that status and who is not inadmissible…

8 U.S.C. §1258(a) (emphasis added). "Tracking the language in the two provisions, § 1254a(f)(4) equates "being in ... lawful status as a nonimmigrant" with § 1258(a)'s "lawfully admitted... as a nonimmigrant." This statutory mirroring is significant because § 1258(a) uses the word "admitted," thus supporting the interpretation that "being in ... lawful status as a nonimmigrant" qualifies Ramirez as being "admitted" for purposes of both statutory provisions — §§ 1255 and 1258 — cited in § 1254a(f)(4). *Ramirez v. Brown*, 852 F.3d at 961-962.

Defendants correctly point out that in 8 U.S.C. § 1255 the statutory language explicitly states that exceptions to the "inspected and admitted or paroled"

requirements exist for certain adjustment applicants such as juvenile immigrants. Defendants' Memorandum at 22. Defendants are also correct in their assertion that 8 U.S.C. § 1255 does not explicitly state an exception to "inspected and admitted or paroled" requirement for TPS holders. The difference is that special immigrant juveniles are neither in or are considered to be in lawful nonimmigrant status. In contrast, TPS holders are considered to be in lawful nonimmigrant status. 8 U.S.C. 1254a(f)(4); therefore, there is no need for an exception to the "admitted and inspected" requirement of 8 U.S.C. § 1255(a) for TPS holders as they would satisfy such by virtue of them being granted TPS and considered to being in lawful nonimmigrant status for the purposes of adjustment of status.

**B. If the Plaintiffs Have Been "Admitted" They Would Be Eligible to Adjust Status Despite Their Prior Period of Unlawful Status.**

If the plaintiffs are deemed to have been "admitted" pursuant to their grant of TPS than they would satisfy the exception in §1255(k). 8 U.S.C. § 1255(k) applies to employment-based applicants for adjustment of status, such as the plaintiffs in this matter. This section states that employment-based applicants for adjustment only need to maintain continuous lawful status or not engage in unauthorized employment from the date of their last lawful admission. *See* 8 U.S.C. §1255(k)(2)(A).

The plain language of 8 U.S.C. §1254a(f) demonstrates that for purposes of

adjustment of status it applies to all of §1255 and does not limit its application to a certain subsection. The applicability of §1254a(f) is not only limited to §1255(c)(2), which concerns being in lawful immigration status at the time of application for adjustment of status, but also applies to all other subsections including §1255(a) and §1255(k). If Congress had intended the application of §1254a(f) to be limited to certain subsections of §1255 they would have said stated such in the statutory language. *See Medina v. Beers*, 65 F.Supp.3d at 431. In the instant matter, the plaintiffs' admission into lawful nonimmigrant status as grantees of TPS means that they satisfy the "admission" requirement of both §1255(a) and §1255(k).

The Government in their brief are incorrect in arguing that if it is held that Plaintiff Sanchez had been "inspected and admitted" he would still be ineligible for adjustment of status because he failed to continuously maintain a lawful status since he entered the United States. *Defendant's Memorandum* at 33. The Government does acknowledge that an exception pursuant to section 1255(k)(1) does exist for employment-based applicants but argues that Sanchez is not eligible for such as he was paroled and in the Government's view, never admitted. *Id.* at 35. The Government errs here as Sanchez did not contend that his parole satisfies the section 1255(k)(1) exemption, but instead argued that his grant of TPS resulted in an "admission" that satisfies the exemption. This section of the Government's

brief is a bit confusing as their heading states that Sanchez would still be ineligible for adjustment if he was "inspected and admitted" but then argue that he has not been admitted and doesn't meet the exception. *Defendant's Memorandum* 33-35.

Sanchez is applying for adjustment of status based on an employment-based visa and his grant of TPS constitutes an admission for purposes of the exception stated in section 1255(k)(1); therefore, Sanchez's period of unlawful status prior to his grant of TPS does not affect his eligibility to adjust his status.

## II. If the Court Finds the Statute to be Ambiguous the Agency's Interpretation is Not Owed Deference.

While the Plaintiffs continue to contend that that plain language establishes that a grant of TPS constitutes an admission for the purposes of 8 U.S.C. § 1255, even if the Court deems the statute to be ambiguous, deference should not be afforded the agency's decision. The Plaintiffs contend that the Court in this matter should adopt the reasoning of the Eastern District Court of Pennsylvania in *Medina v. Beers*:

> In the present matter, the Court finds that congressional intent as to the meaning of § 1254a(f)(4) is clear. As our holding rests on a plain language reading of the statute, the decision ends here and the Court need not afford deference to the agency's decision. Moreover, even if the statute were somehow ambiguous, the Court agrees with the Sixth Circuit's determination that the agency's decisions are not entitled to deference. Flores, 718 F.3d at 555. As that court noted, under Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), the weight of deference, if so given, depends on "the thoroughness evident in [the agency's] consideration, the

> validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." Flores, 718 F.3d at 555 (quoting Skidmore, 323 U.S. at 140, 65 S.Ct. 161). In this matter, the agency decisions, while consistent with one another, are not validly reasoned and "[b]eing consistently wrong does not afford the agency more deference than having valid reasoning." Id. Accordingly, the Court declines to afford the agency any deference. *Medina*, 65 F.Supp.3d at 436-37.

## CONCLUSION

For the foregoing reasons, this Court should uphold the district court's Order granting the plaintiffs' motion for summary judgment and remand the matter to USCIS for action consistent with such.

Respectfully submitted this 26th day of August, 2019.

/s/ Michael J. DeBenedictis
Michael J. DeBenedictis
DEBENEDICTIS & DEBENEDICTIS, LLC

*Attorneys for Plaintiffs-Appellees*

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Plaintiffs believes that oral argument would be appropriate, because this case raises important questions regarding the proper interpretation of the Immigration and Nationality Act.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed Plaintiffs-Appellee's Reply Brief with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the CM/ECF system on August 26, 2019. I certify that counsel for all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Michael J. DeBenedictis
Michael J. DeBenedictis

## CERTIFICATION RE ATTORNEY ADMISSIONS

Pursuant to Local Rules 28.3(d) and 46.1(e), I hereby certify that Michael J. DeBenedictis is a member of the bar of this court.

/s/ Michael J. DeBenedictis
Michael J. DeBenedictis

## CERTIFICATE OF COMPLIANCE

Pursuant to the Federal Rules of Appellate Procedure, Rule 32(a)(7)(c), I hereby certify that the foregoing brief of Plaintiffs-Appellees complies with the word count limitation of Rule 32(a)(7)(B). There are 4,847 words in the brief (pursuant to Rule 32(a)(7)(B)(iii)) according to the word count function of Microsoft Word, the word processing program used to prepare the brief.

/s/ Michael J. DeBenedictis
Michael J. DeBenedictis

**VERIFICATION ELECTRONIC AND PAPER COPIES ARE IDENTICAL**

I hereby certify that the electronic and paper copies of Plaintiffs-Appellees Reply Brief are identical.

/s/ Michael J. DeBenedictis
Michael J. DeBenedictis

## VERIFICATION OF VIRUS SCAN

I hereby certify that the electronic copy of the brief was scanned for viruses using Norton © 360 with updates as of 8/26/2019.

/s/ Michael J. DeBenedictis
Michael J. DeBenedictis