**No. 19-1311**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

---

**JOSE SANTOS SANCHEZ & SONIA GONZALEZ,**
**Plaintiffs-Appellees**,

v.

**KEVIN McALEENAN, ACTING SECRETARY,**
**U.S. DEPARTMENT OF HOMELAND SECURITY;**

**KENNETH T. CUCCINELLI, ACTING DIRECTOR,**
**U.S. CITIZENSHIP AND IMMIGRATION SERVICES;**

**KRIS KRANDALL, FIELD OFFICE DIRECTOR,**
**LINCOLN USCIS FIELD OFFICE; and**

**JOHN THOMPSON, DISTRICT DIRECTOR,**
**NEWARK USCIS FIELD OFFICE,**

**Defendants-Appellants**.

---

**ON APPEAL FROM A FINAL JUDGMENT OF THE**
**U.S. DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF NEW JERSEY**
No. 1:16-cv-00651 (Kugler, J.) (D.N.J. Dec. 7, 2018)

---

# DEFENDANTS-APPELLANTS' REPLY BRIEF

---

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation.
District Court Section

JEFFREY S. ROBINS
Deputy Director
Office of Immigration Litigation
District Court Section

UBAID ul-HAQ
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation,
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
T: (202) 532-4112
F: (202) 305-7000
ubaid.ul-haq@usdoj.gov

*Counsel for Defendants-Appellants*

## TABLE OF CONTENTS


INTRODUCTION ........................................................................................1

ARGUMENT ............................................................................................3

I. Plaintiffs Are Ineligible to Adjust Their Status Because They Entered Without Inspection and Admission and Failed to Continuously Maintain a Lawful Status Since Entry. ..........................3

A. Plaintiffs are Ineligible for Adjustment of Status Because They Entered the United States Without Being "Inspected and Admitted," and Nothing in the TPS Statute Changes That. ..........................................................4

B. Even if Plaintiff Sanchez had Been "Inspected and Admitted," He Would Still be Ineligible for Adjustment of Status Because He Failed to Continuously Maintain a Lawful Status Since He Entered the United States...................11

II. If the Court Concludes That the Statute is Ambiguous, It Should Defer to USCIS's Interpretation Under *Chevron* and Because it is Longstanding and Reasonable. .....................................14

CONCLUSION .......................................................................................17

## TABLE OF AUTHORITIES

### Federal Cases

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837 (1984)............................................................................3, 16

*De Leon Ochoa v. Holder*, 622 F.3d 341 (3d Cir. 2010)..........................................7

*Duron v. Stul*, 724 F. App'x 791 (11th Cir. 2018)..................................................12

*Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208 (2009) .......................................17

*Guerrero v. Nielsen*, 742 F. App'x 793 (5th Cir. 2018) ..........................................13

*Hanif v. Att'y Gen. of U.S.*, 694 F.3d 479 (3d Cir. 2012) .............................. passim

*INS v. Aguirre-Aguirre*, 526 U.S. 415 (1999)..........................................................17

*Medina v. Beers*, 65 F. Supp. 3d 419 (E.D. Pa. 2014).............................................15

*Melendez v. McAleenan*, 928 F.3d 425 (5th Cir. 2019)...........................................12

*Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998)................................................9

*Ramirez v. Brown*, 852 F.3d 954 (9th Cir. 2017)......................................................9

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) ........................................................14

*Taveras v. Attorney General of the United States*,
731 F.3d 281 (3d Cir. 2013).....................................................................................6, 7

*Totimeh v. Att'y Gen. of U.S.*, 666 F.3d 109 (3d Cir. 2012) ...................................14

### Administrative Decisions

*Matter of Alyazji*, 25 I. & N. Dec. 397 (BIA 2011) ................................................14

*Matter of H-G-G-*, 27 I. & N. Dec. 617 (AAO 2019).................................. 3, 15, 16

## Statutes

8 U.S.C. § 1101(a)(13)(A) .....5, 6

8 U.S.C. § 1182(a) .....8

8 U.S.C. § 1184(a)(4).....8

8 U.S.C. § 1182(i) .....8

8 U.S.C. § 1254a(c)(2) .....8

8 U.S.C. § 1254a(f)(4) ..... passim

8 U.S.C. § 1255.....5

8 U.S.C. § 1255(a) ..... passim

8 U.S.C. § 1255(b) .....5, 12

8 U.S.C. § 1255(c)(2)..... passim

8 U.S.C. § 1255(h) .....10

8 U.S.C. § 1255(k)(1).....2, 13

8 U.S.C. § 1255(k)(2).....13

8 U.S.C. § 1258(a) .....9

## Regulations

8 C.F.R. § 1003.1(g)(1).....16

8 C.F.R. § 1003.1(g)(2).....16

8 C.F.R. § 1003.1(i) .....16

8 C.F.R. § 103.10 .....16

## INTRODUCTION

This Court should reverse the district court's judgment and uphold USCIS's denial of Plaintiff-Appellees Jose Santos Sanchez's and Sonia Gonzalez's adjustment-of-status applications. As the government explained in its opening brief, Plaintiffs were not "inspected and admitted or paroled" upon their initial entry into the United States and do not qualify for any exception to or exemption from that requirement for adjustment of status. Nothing about their receipt of Temporary Protected Status (TPS), nor their later return from temporary foreign travel with advanced parole documents into the United States, changes that. So they are ineligible for adjustment of status. Plaintiffs' arguments to the contrary lack merit.

*First*, Plaintiffs contend that they satisfy § 1255(a)'s "inspected and admitted" requirement because their "application and grant of their nonimmigrant status as TPS holders requires them being 'admitted.'" Resp. Br. 7; *see also id.* at 5, 7-8. This argument fails because a grant of TPS is not a grant of "nonimmigrant status" and does not require an admission. Such a grant means only that an alien is "considered as being in, and maintaining, lawful status as a nonimmigrant." 8 U.S.C. § 1254a(f)(4). It does not change the fact that an alien was never "inspected and admitted." *See* Opening Br. 23-34. Plaintiffs relatedly contend that obtaining TPS is "akin to an alien who is considered admitted after an adjustment of status."

Resp. Br. 8; *see also id.* at 10-14. But this Court has already rejected the proposition that adjustment of status is an "admission," *Hanif v. Att'y Gen. of U.S.*, 694 F.3d 479, 485 (3d Cir. 2012), and there is even less basis to claim that the TPS statute provides an "admission." Plaintiffs suggest further "that a grant of TPS should be considered an admission for § 1255" because "the application and approval process for TPS is very similar to the 'admission' process for nonimmigrants." Resp. Br. 8; *see also id.* at 8-9. Of course, Plaintiffs would not need this analogy if § 1254a(f)(4) said that it supplies an admission. But it does not say that. And Plaintiffs' analogy does not give them the boost they need. The admission process and TPS process are meaningfully different—and the former is far more rigorous, a feature that reflects that Congress reserved adjustment of status for those who met rigorous criteria.

*Second*, Plaintiffs claim that they are eligible, under 8 U.S.C. § 1255(k)(1), to waive their unlawful status prior to obtaining TPS. *See* Resp. Br. 18-19. But the waiver at § 1255(k)(1) requires that alien be "*present in the United States pursuant* to a lawful admission." 8 U.S.C. § 1255(k)(1) (emphasis added). Plaintiffs obtained no such lawful admission. To the contrary, it is Plaintiffs' unlawful entry, and not TPS, that is the reason they are present in the United States.

*Finally*, Plaintiffs contend that, if the Court finds the statute ambiguous, the government's interpretation of the statute would not be entitled to deference. *See*

Resp. Br. 19-20. But Plaintiffs do not meaningfully address the longstanding, well-reasoned nature of the agency's interpretation of the TPS statute if it finds that the language is ambiguous. And the government's claim for deference is now bolstered following the issuance of *Matter of H-G-G-*, 27 I. & N. Dec. 617, 626 (AAO 2019), a USCIS decision that embraces the agency's longstanding interpretation in a precedential decision. If the Court finds the statute ambiguous, that precedential agency decision would warrant deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984).

## ARGUMENT

### I. Plaintiffs Are Ineligible to Adjust Their Status Because They Entered Without Inspection and Admission and Failed to Continuously Maintain a Lawful Status Since Entry.

As the government has explained, the statutory text and structure compel the conclusion that an alien is eligible for an adjustment of status only if he was "inspected and admitted or paroled," 8 U.S.C. § 1255(a), that he must also continuously maintain a lawful status since entry, *see id.* § 1255(c)(2), and that nothing about a grant of TPS under § 1254a changes those requirements. *See* Opening Br. 17-36. USCIS correctly concluded that Plaintiffs do not satisfy the statutory requirements and so are ineligible for adjustment of status. Plaintiffs' arguments to the contrary, *see* Resp. Br. 3-19, lack merit.

### A. Plaintiffs are Ineligible for Adjustment of Status Because They Entered the United States Without Being "Inspected and Admitted," and Nothing in the TPS Statute Changes That.

Because an alien must have been "inspected and admitted" to be eligible for adjustment of status, 8 U.S.C. § 1255(a)—and because TPS does not confer an admission on an alien or deem an alien "admitted," *see id.* § 1254a(f)(4)—a grant of TPS does not satisfy the requirements for adjustment of status. *See* Opening Br. 17-32. Plaintiffs make several arguments to the contrary. *See* Resp. Br. 5-17. None withstands scrutiny.

*First*, Plaintiffs contend that they satisfy § 1255(a)'s "inspected and admitted" requirement because their "application and grant of their nonimmigrant status as TPS holders requires them being 'admitted.'" Resp. Br. 7; *see id.* ("[T]he process of obtaining nonimmigrant status requires the 'admission' of the alien."); *see also id.* at 5, 7-8. This argument fails because a grant of TPS is not a grant of "nonimmigrant status" and does not require an admission. Such a grant means only that an alien is "considered as being in, and maintaining, lawful status as a nonimmigrant." 8 U.S.C. § 1254a(f)(4). It does not change the fact that an alien was never "inspected and admitted." *See* Opening Br. 23-34. This is confirmed by the fact that even holding a lawful status (such as lawful nonimmigrant status) does not always require an admission. *See id.* at 18-19.

In a variation of that same argument—that "the process of obtaining TPS constitutes an admission"—Plaintiffs contend that obtaining TPS is "akin to an alien who is considered admitted after an adjustment of status." Resp. Br. 8; *see also id.* at 10-14. Plaintiffs maintain (*see id.* at 10) that 8 U.S.C. § 1255(b) provides that an alien is admitted when he adjusts his status: "upon the approval of an application for adjustment made under subsection (a), the Attorney General shall record the alien's *lawful admission* for permanent residence as of the date." 8 U.S.C. § 1255(b) (emphasis added). But this Court has already rejected the proposition that § 1255(b) establishes that adjustment of status is an "admission," and has held instead that the provision embodies a "record requirement" that is only "a ministerial provision" "rather than an effort by Congress to amend the definitions of 'admitted'" set forth in 8 U.S.C. § 1101(a)(13)(A). *Hanif v. Att'y Gen. of U.S.*, 694 F.3d 479, 485 (3d Cir. 2012). There is even less basis to claim that the TPS statute provides an "admission": in contrast to § 1255(b), § 1254a(f)(4) does not include that term. Plaintiffs contend that *Hanif* "did not discuss if only a physical entry into the United States would suffice as an admission for purposes of 8 U.S.C. § 1255." Resp. Br. 12; *see also id.* at 10, 12-14. But *Hanif* did limit "admission" in § 1255(a) to its port-of-entry definition, holding that an alien who adjusted his status after "having entered the United States illegally, technically was never 'admitted' to the country as defined in

§ 1101(a)(13)(A)." *Hanif*, 694 F.3d at 487. TPS is also just a new status that Plaintiffs acquired but without any admission. Similarly, in *Taveras v. Attorney General of the United States*, 731 F.3d 281 (3d Cir. 2013), this Court rejected the argument that adjustment of status could satisfy the definition of admission at § 1101(a)(13)(A), explaining that adjustment of status is "a procedure that is structured to take place entirely within the United States." *Id.* at 290. Plaintiffs contend that *Taveras* "does not establish that one cannot be considered to have been admitted without a physical entry at a port-of-entry." Resp. Br. 11; *see also id.* at 10-12. But *Taveras*'s logic leads to that conclusion. If, as *Taveras* recognizes, adjustment of status is not an admission because it is obtained from within the United States, TPS is also not an admission for the same reasons.

Plaintiffs make the further, related arguments that "the definition of 'admission' does not require the inspection and authorization to be made at a particular point—such as a port of entry" and that "[a]n individual's original entry is irrelevant because the subsequent grant of TPS . . . provides the 'lawful entry' referred to in § 1101(a)(13)." Resp. Br. 14-15. These arguments cannot be reconciled with the statutory text. The definition of "admission" requires that it occur upon "the *lawful entry* of the alien into the United States *after* inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphases added). The statute

clearly provides a time (after inspection and authorization) and a place (entry into the United States, which can happen only if an alien is first outside the United States) for admission. *See Taveras*, 731 F.3d at 290 (noting the terms "entry" and "into" in the definition of "admission"). And obtaining TPS cannot be a physical entry into the United States because an alien must have already completed an entry and be physically present in the United States before he can obtain TPS. *See* 8 U.S.C. § 1254a(c)(1)(A)(i); Opening Br. 21, 30-31. This Court has accordingly held that TPS "unambiguous[ly]" is not "a program of entry for an alien." *De Leon Ochoa v. Holder*, 622 F.3d 341, 354 (3d Cir. 2010). Thus, the date that Plaintiffs gained their temporary "status is not the same as the date of the physical event of entering the country." *Hanif*, 694 F.3d at 485. TPS is merely a new status that Plaintiffs acquired but without any admission into that status. *See* Opening Br. 20-23. Just as adjustment of status is not an admission because it is obtained from within the United States, *see* 8 U.S.C. § 1255(a), neither is TPS, which is also obtained from within the United States.

*Second*, as a backup to their topline argument that TPS *requires* an admission, Plaintiffs suggest "that a grant of TPS should be considered an admission for § 1255" because "the application and approval process for TPS is very similar to the 'admission' process for nonimmigrants." Resp. Br. 8; *see also id.* at 8-9. Of course,

Plaintiffs would not need this analogy if § 1254a(f)(4) said that it supplies an admission. But it does not say that. And Plaintiffs' analogy does not give them the boost they need. The admission process and TPS process are meaningfully different—and the former is far more rigorous, a feature that reflects that Congress reserved adjustment of status for those who met rigorous criteria. *See* Opening Br. 27-28. An applicant for admission at a U.S. port of entry presenting a nonimmigrant visa is, for example, subject to the full panoply of inadmissibility grounds. *See* 8 U.S.C. § 1182(a) ("aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted"). An applicant for TPS is not. *See* 8 U.S.C. § 1254a(c)(2). Such an applicant can obtain TPS even if he: could be considered a public charge, 8 U.S.C. § 1184(a)(4); is present without admission or parole, *id*. § 1182(a)(6)(A)(i); or is present after previous immigration violations, *id*. § 1182(a)(9). In addition, certain inadmissibility grounds may be waived specifically for a grant of TPS. *See* 8 U.S.C. § 1254a(c)(2)(A)(ii). General waivers for inadmissibility are not so broad or may not even be available. *See, e.g.*, 8 U.S.C. § 1182(i) (requiring a waiver applicant for material misrepresentation to demonstrate "extreme hardship" to a U.S. citizen or lawful-permanent-resident spouse or parent); *id*. § 1182(a)(4) (public charge ground of inadmissibility that has no attendant waiver). Thus, deeming the grant of TPS to involve an admission would create a

loophole—for aliens who were not admitted and inspected—to obtain lawful permanent resident status.

*Third*, Plaintiffs contend that § 1255's title, "Adjustment of status of a nonimmigrant to that of a person admitted for permanent residence," "directly links the adjustment statute to the TPS statute" since the latter uses the phrase "lawful status as a nonimmigrant." Resp. Br. 16 (quoting *Ramirez v. Brown*, 852 F.3d 954, 961 (9th Cir. 2017)); *see also id.* at 15-16. Nothing about that title, however, alters the fact that § 1254a(f)(4) contains no language stating that a grant of TPS constitutes an admission. And "the title of a statute" "is of use only when it sheds light on some ambiguous word or phrase." *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (internal quotation marks, alterations, and citation omitted). There is no ambiguity at issue here. *Cf.* Resp. Br. 5.

*Fourth*, Plaintiffs invoke 8 U.S.C. § 1258(a), which provides that the Secretary of Homeland Security may "authorize a change from any nonimmigrant classification to any other nonimmigrant classification in the case of an alien lawfully *admitted* to the United States as a nonimmigrant who is continuing to maintain that status and who is not inadmissible." 8 U.S.C. § 1258(a) (emphasis added). According to Plaintiffs, § 1254a(f)(4) "equates" "being in . . . lawful status as a nonimmigrant" with § 1258(a)'s "lawfully admitted . . . as a nonimmigrant."

Resp. Br. 16. But this line of argument just assumes the conclusion that Plaintiffs want to reach. Nothing about § 1258(a) says that TPS itself constitutes an inspection and admission that should have occurred upon entry. Moreover, § 1258 is an entirely different statute that has separate requirements from § 1255(a).

*Finally*, Plaintiffs attempt to respond to the government's point (*see* Opening Br. 22-23) that Congress has provided express exceptions to the "inspected and admitted or paroled" requirement in § 1255(a) and that TPS is not one of those exceptions. *See* Resp. Br. 17-18. One exception, the government is observed, is for special immigrant juveniles, who Congress "deemed, for purposes of" § 1255(a), "to have been paroled into the United States." 8 U.S.C. § 1255(h)(1). Plaintiffs counter that, unlike persons granted TPS, "special immigrant juveniles are neither in or are considered to be in lawful nonimmigrant status." Resp. Br. 17. But the point is that Congress has created a pathway for special immigrant juveniles to adjust status by deeming them paroled. *See* 8 U.S.C. § 1255(h). Congress did no such thing for those who obtain TPS. Indeed, even Plaintiffs concede that Congress "state[d] that exceptions to the 'inspected and admitted or paroled' requirements exist for certain adjustment applicants . . . [but not] . . . for TPS holders." Resp. Br. 16-17. The existence of these special pathways to adjustment of status for aliens not otherwise inspected and admitted or paroled indicates that Congress knew how to create

exceptions for these requirements. It did not create any such exceptions for aliens granted TPS.

* * *

Plaintiffs' arguments lack merit. The Court should reject Plaintiffs' textually insupportable view of the TPS and adjustment-of-status statutes.

### B. Even if Plaintiff Sanchez had Been "Inspected and Admitted," He Would Still be Ineligible for Adjustment of Status Because He Failed to Continuously Maintain a Lawful Status Since He Entered the United States

As the government has explained, *see* Opening Br. 33-36, even if Plaintiffs could meet the "inspected and admitted or paroled" requirement, they would still be ineligible for adjustment of status because they "failed to maintain continuously a lawful status since entry into the United States." 8 U.S.C. § 1255(c)(2). Plaintiffs' arguments to the contrary, *see* Resp. Br. 17-19, lack merit.

*First*, Plaintiffs contend that if they "are deemed to have been 'admitted' pursuant to their grant of TPS than [sic] they would satisfy the exception in § 1255(k)." Resp. Br. 17. For the reasons discussed in the government's opening brief and above, TPS is not, and does not provide, an admission. *See supra* 4-10; Opening Br. 17-32. So Plaintiffs get nothing from this point.

*Second*, Plaintiffs contend that § 1254a(f)(4) "applies to all of § 1255," Resp. Br. 18, which is to say (according to Plaintiffs) that § 1254a(f)(4) not only provides

an inspection and admission for § 1255(a), but also waives all grounds of ineligibility for adjustment of status. *See* Resp. Br. 17-18. Several of these grounds of ineligibility are found in § 1255(c), including the bar relevant to Plaintiffs—the bar for failure "to maintain continuously a lawful status since entry into the United States." 8 U.S.C. § 1255(c)(2). Plaintiffs contend that the government is "incorrect in arguing that Plaintiff Sanchez . . . would still be ineligible for adjustment of status because he failed to continuously maintain a lawful status since he entered the United States" under § 1255(c)(2). Resp. Br. 18 (citing Opening Br. 33). But § 1254a(f)(4) does not say that it waives that § 1255(c)(2) bar—or § 1255(c)'s other bars—at all. Section 1254a(f)(4) does not provide a lawful status when an alien possesses no lawful status upon entry. In *Melendez v. McAleenan*, 928 F.3d 425, 428-49 (5th Cir. 2019), for example, and consistent with the government's argument, *see* Opening Br. 23-24, the Fifth Circuit held that § 1254a(f) did "not alter the legal effect of other periods of an alien's presence," meaning that TPS would not waive the specific bar to adjustment of status at § 1255(c)(2) for pre-TPS periods of unlawful status. *Id.* at 428-49; *see Duron v. Stul*, 724 F. App'x 791, 795 (11th Cir. 2018) (same). Section 1254a(f)(4) only bridges the gap between a previously obtained lawful status and a later TPS. That is, an alien that has already been inspected and admitted, who then obtains TPS, would not have to worry about falling out of the

status gained from the initial inspection and admission (say, by overstaying a nonimmigrant visa). It allows them to continue to be in a lawful status without a gap in status, so that they can be eligible for adjustment of status. *See* Opening Br. 23-24. Section 1254a(f)(4) similarly does not cure the crewman bar to adjustment of status at § 1255(c)(1). *See Guerrero v. Nielsen*, 742 F. App'x 793, 798 (5th Cir. 2018). These cases show that bars to adjustment of status in § 1255 survive even after an alien is granted TPS, and thus that § 1254a(f) does not have the sweeping curative effect that Plaintiffs claim.

*Third*, Plaintiffs further contend that their "grant of TPS resulted in an 'admission' that satisfies the exemption" at 8 U.S.C. § 1255(k)(1). Resp. Br. 18; *see also id*. at 19 ("Sanchez's period of unlawful status prior to his grant of TPS does not affect his eligibility to adjust his status."). Section 1255(k) allows an employment-based adjustment applicant to waive prior periods of unlawful status so long as the applicant is "present in the United States pursuant to a lawful admission" and has not, "subsequent to such admission," *inter alia*, "failed to maintain, continuously, a lawful status" for an "aggregate period exceeding 180 days." 8 U.S.C. § 1255(k)(1)-(2). But the key language is that the waiver applicant must be "*present in the United States pursuant to* a lawful admission." 8 U.S.C. § 1255(k)(1) (emphasis added); *cf. Hanif*, 694 F.3d at 486 ("Congress['s] . . . omission of this additional modifier creates a

significant distinction between the two sections.”). TPS is not the reason why Plaintiffs are present in the United States. TPS is the reason that Plaintiffs have been allowed to remain in the United States, despite having entered unlawfully initially. *Cf. Totimeh v. Att'y Gen. of U.S.*, 666 F.3d 109, 117 (3d Cir. 2012) (noting that an adjustment of status “‘may have *extended* or reauthorized [an alien's] then existing presence, but it did not change his status vis-à-vis the grounds of deportability'”) (quoting *Matter of Alyazji*, 25 I. & N. Dec. 397, 408 (BIA 2011) (emphasis internal)). And as discussed above, TPS is itself not an entry by the plain language of the statute. *See supra* 7; *see also* Opening Br. 21, 30-32.

Because TPS is not itself an admission, nor is it the “admission” by which Plaintiffs are in any event present in the United States, they cannot qualify for the waiver under § 1255(k). They are ineligible for adjustment of status, and this Court should reverse the district court's decision to the contrary.

## II. If the Court Concludes That the Statute is Ambiguous, It Should Defer to USCIS's Interpretation Under *Chevron* and Because it is Longstanding and Reasonable.

As the government has explained, if the Court finds the statute ambiguous, it should defer to the agency's interpretation of the TPS statute because it is longstanding and reasonable. *See* Opening Br. 36-38. Plaintiffs argue to the contrary by citing a district court's rejection of deference under *Skidmore v. Swift &*

*Co.*, 323 U.S. 134 (1944), on the grounds that the agency's view was "not validly reasoned" (though the agency's relevant decisions were "consistent with one another"). *Medina v. Beers*, 65 F. Supp. 3d 419, 437 (E.D. Pa. 2014); *see* Resp. Br. 19-20. As already explained, the agency's longstanding and consistent view is well-grounded and consistent with the statute—and *Medina*'s contrary analysis was wrong. *See* Opening Br. 28-31. Plaintiffs' dismissal of the agency's view also does not account for the contemporaneous interpretation of the TPS statute at the time of its promulgation. *See id*. at 37-38.

The government adds that, since the prior briefing in this case, its position has been bolstered by USCIS's decision in *Matter of H-G-G-*, 27 I. & N. Dec. 617 (AAO 2019). *Matter of H-G-G-* affirmed a denial of adjustment of status because the TPS beneficiary there was not inspected and admitted or paroled and had a period of unlawful status before TPS. 27 I. & N. Dec. at 641. In reaching that conclusion, the AAO relied primarily on the plain text of 8 U.S.C. § 1254a(f)(4), which "on its face . . . does not provide for the inspection, admission, or parole of an alien, as the terms are entirely absent." *Id.* at 626, 625-31. The AAO also rejected the proposition that "being in" nonimmigrant status necessarily includes an inspection and admission, observing that "the notion that a grant of TPS is an entry or admission is contradicted by the statute, which requires an applicant to be physically present in the United

States in order to seek TPS." *Id.* at 633-34. And the AAO concluded that if § 1254a(f)(4) were ambiguous, its most reasonable construction is that TPS does not provide an admission for adjustment of status. *Id.* at 639-40.

If the Court finds the TPS statute and other relevant provisions ambiguous, it should accord "controlling weight" to the agency's precedential interpretation under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984). This agency opinion is "binding on all officers and employees of the [Department of Homeland Security]" as well as on "immigration judges." 8 C.F.R. § 1003.1(g)(1). The agency's regulations allow certain decisions of USCIS's Administrative Appeals Office to be filed "with the Attorney General . . . for publication as precedent in future proceedings, and, upon approval . . . the Director of the Executive Office for Immigration Review shall cause such decisions to be published in the same manner as decisions of the Board [of Immigration Appeals] and the Attorney General." 8 C.F.R. § 1003.1(i). It is "precedent in all proceedings involving the same issue or issues." 8 C.F.R. §§ 103.10, 1003.1(g)(2).

If the Court believes the statute to be ambiguous, *Chevron* deference is appropriate because the agency's decision is thorough and reasonable and takes into account the text, structure, purpose, and history of the TPS statute. *See Matter of H-G-G-*, 27 I. & N. Dec. at 623-37. Its reading should "govern[] if it is a reasonable

interpretation of the statute—not necessarily the only possible interpretation, nor even the interpretation deemed *most* reasonable by the courts." *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208 (2009) (emphasis internal). Deference to the AAO here "is especially appropriate in the immigration context where officials exercise especially sensitive political functions that implicate questions of foreign relations." *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (internal quotation marks and citation omitted). Accordingly, if the Court reaches the question of statutory ambiguity, it should defer to the agency's reasonable interpretation of the statutes.

## CONCLUSION

Plaintiffs were not "inspected and admitted or paroled" upon entry into the United States and do not qualify from any exception to or exemption from that requirement. They failed to continuously maintain lawful status since their initial unlawful entry into the United States. They are, accordingly, ineligible for adjustment of status, and USCIS correctly denied their adjustment applications. The district court erred in ruling otherwise. This Court should reverse the district court's judgment and remand with directions to grant summary judgment to the government.

Respectfully submitted,

Dated: October 31, 2019

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation

JEFFREY S. ROBINS
Deputy Director
District Court Section
Office of Immigration Litigation

*/s/ Ubaid ul-Haq*
UBAID ul-HAQ
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4112
Fax: (202) 305-7000
ubaid.ul-haq@usdoj.gov

*Counsel for Defendants-Appellants*

## CERTIFICATION OF BAR MEMBERSHIP

Pursuant to Third Circuit Local Rule 28.3, I hereby certify that as counsel for the United States, my membership in the bar of the U.S. Court of Appeals for the Third Circuit is waived.

*/s/ Ubaid ul-Haq*
UBAID ul-HAQ
Trial Attorney

## CERTIFICATION OF BRIEF FORMAT AND VIRUS CHECK

I certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i). As measured by the word processing system used to prepare this brief, it contains 4,129 words.

I certify that the PDF version of this document was scanned with Symantec Endpoint Protection and no virus was detected.

I certify that the PDF version of this document filed with the Clerk of the Court through the CM/ECF system is identical to the hard copies sent to the Court via certified mail.

*/s/ Ubaid ul-Haq*
UBAID ul-HAQ
Trial Attorney

## <u>CERTIFICATION OF FILING AND SERVICE</u>

I hereby certify that on October 31, 2019, I electronically filed this Opening Brief for the Defendants-Appellants with the Court Clerk using the ECF system which will send notification to Plaintiffs-Appellees.

*<u>/s/ Ubaid ul-Haq</u>*
UBAID ul-HAQ
Trial Attorney